2002-NMCA-085

51 P.3d 1183

**Patrick DeFILLIPPO, Stephanie DeFillippo, Gary Lizzi and Patricia Lizzi, Plaintiffs–Appellees,**

v.

**Eva NEIL, Defendant–Appellant.**

No. 21,748.

Court of Appeals of New Mexico.

June 21, 2002.

Leof T. Strand, Albuquerque, NM, Steven L. Tucker, Tucker Law Firm, P.C., Santa Fe, NM, for Appellees.

Kim E. Kaufman, Albuquerque, NM, for Appellant.

*OPINION*

BUSTAMANTE, Judge.

{1} Plaintiffs Patrick DeFillippo, Stephanie DeFillippo, Gary Lizzi, and Patricia Lizzi filed suit against Eva Neil (Neil) claiming damages for personal injuries suffered as a result of the collapse of a balcony. Neil filed her answer to the complaint one day late, and the trial court entered a "default judgment" against her in favor of Plaintiffs. Neil filed a motion to set aside the default, pursuant to Rules 1–055(C) and 1–060(B) NMRA 2002. The trial court denied this motion as well as her request for a jury trial on the issue of damages. Neil appeals from the denial of her motion to set aside the default and from the trial court's denial of a jury trial on the issue of damages.

{2} To resolve the case, we analyze the applicability of Rules 1–055(C) and 1–060(B) as well as the discretion accorded a trial judge under Rule 1–055(C). We reverse the trial court's refusal to set aside the default and remand the case for a trial on the merits.

**BACKGROUND**

{3} This action arises from injuries assertedly sustained by two of the Plaintiffs, Patrick DeFillippo and Gary Lizzi, on June 18, 1995, when an apartment complex balcony on which they were standing suddenly collapsed. Neil owned the apartment complex and had rented one of the units to Gary and Patricia Lizzi. Plaintiffs alleged Patrick and Gary suffered damages in the forms of physical injuries, pain and suffering, permanent disability, and economic losses as a result of the accident. Their wives alleged they suffered past and future loss of their husbands' services and loss of consortium.

{4} Plaintiffs filed suit on June 4, 1998. Service was effected by leaving a copy of the summons and complaint at Neil's residence on June 11. There is no allegation that service was improper. The answer to the complaint was due by July 13. On the morning of July 14, Plaintiffs filed a certificate as to the state of the record and non-appearance, an affidavit for entry of default, and an application for default judgment. The trial court entered a "default judgment" the morning of July 14. Neil's answer was fax-filed with the court on the afternoon of July 14, and filed again in person on July 15.

{5} Neil filed a "Motion To Set Aside Default Judgment" on July 24, and a "Jury Demand" on July 23. In her motion, Neil argued that the answer had been filed one day late because her insurance claims adjuster erred in calculating the due date for the answer and did not deliver the summons and complaint to her attorneys until July 14. Neil's motion cited Rules 1–055 and 1–060 as grounds for relief and also asserted the existence of a meritorious defense. As a practical matter, the majority of Neil's arguments asserted she had met the "excusable neglect" standard set forth in Rule 1–060(B)(1) for setting aside a default judgment.

{6} The trial court initially denied Neil's request for relief. On Neil's oral motion for reconsideration, the trial court reversed itself and ruled in her favor. Plaintiffs thereafter moved for reconsideration of the trial court's second ruling. Ultimately, on March 11, 1999, the trial court issued an order denying Neil's motion to set aside default judgment. The trial court concluded that Neil "did not carry her burden of demonstrating that her insurer's conduct met the standard for relief under [R]ule 1–060(B)(1)." This Court, on April 27, 1999, denied Neil's application for leave to file an interlocutory appeal on the issue. After a bench trial on the issue of damages, judgment was entered for Plaintiffs in the amount of $919,478.56, plus costs.

**PRESERVATION**

{7} On appeal, Neil argues that the trial court erred as a matter of law in applying the Rule 1–060(B) standard as opposed to the more lenient Rule 1–055(C) standard for setting aside a default "[f]or good cause shown." She asserts that the order filed on the morning of July 14, 1998, was "mistakenly characterized as a default judgment, rather than a default" because the trial court was

required to hold a hearing and decide damages before it could enter a final default judgment.

{8} Plaintiffs counter that, despite citing to Rule 1–055(C) in her motion, Neil did not file a motion to set aside "entry of default" under the good cause provision in Rule 1–055(C); she filed a motion to set aside "default judgment" under Rule 1–060(B). Thus, Plaintiffs argue we should not reach the issue of whether the trial court should have applied the more liberal good cause standard under Rule 1–055(C) rather than the excusable neglect standard under Rule 1–060(B) because it was not properly preserved. Rule 12–216 NMRA 2002; *Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App. 1987). Plaintiffs also note that the preservation requirement is at least partially a matter of fairness to other parties in a lawsuit. *Hinger v. Parker & Parsley Petroleum Co.*, 120 N.M. 430, 440, 902 P.2d 1033, 1043 (Ct. App.1995).

{9} We do not believe Neil's nomenclature is of any particular import. Under the circumstances, where a document entitled "Default Judgment" was entered by the trial court, Neil was well advised to caption her motion as she did, while addressing the standards applicable to defaults and default judgments in the body of her motion. Furthermore, as Wright, Miller & Kane observes, "[a]lthough Rule 55(c) envisions a formal motion for relief, the courts have shown considerable leniency in treating other procedural steps as equivalent to a motion, particularly when the conduct evidences a desire to correct the default." CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE, Civ.3d, § 2692, at 85–86 (1998); *see also* 10 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE § 55.50[1][b][i] (3d ed. 2001) and cases cited therein. This liberality of construction comports with the judicial preference for deciding matters on the merits.

{10} Neil's motion to set aside default judgment specifically referred to the good cause standard of Rule 1–055(C) and the excusable neglect standard of Rule 1–060(B), as well as the factors to be considered under each of the rules, the liberal construction

accorded to these factors, and the courts' general attitude of disfavor toward defaults and default judgments. Neil's counsel also cited Rule 1–055(C) and the good cause standard in the course of his argument at the hearing held on the motion. We hold that, while the matter is not entirely free from doubt, Neil properly preserved her argument that the trial court should apply the Rule 1–055(C) standard for setting aside a default.

{11} Plaintiffs cite *EEOC v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 527–28 (11th Cir.1990), for the proposition that an appellate court should not apply the "good cause shown" standard even when dealing with a motion to set aside an entry of default when a defendant fails to bring the standard to the trial court's attention. We do not disagree with the holding of the case, but it is clearly distinguishable. The defendant in *Mike Smith Pontiac* apparently never mentioned the good cause shown standard in its pleadings to the trial court. Here, Neil raised Rule 1–055(C) and the good cause standard both in her pleadings and her oral arguments. In addition, the defendant in *Mike Smith Pontiac* displayed a completely different attitude towards its default, in that it failed to respond at all to the complaint or entry of default, despite notice of each, until four months after the entry of default was served on it. Under these circumstances, it is understandable that the appellate court was reluctant to exercise its discretion to overlook a complete lack of preservation below.

■ {12} Our finding of adequate preservation does no violence to the prudential bases of the preservation rule. In fact, it furthers them. The primary purposes of the preservation requirement are (1) that the trial court be alerted to the potential error and have an opportunity to avoid mistakes, and (2) that opposing parties be given a fair opportunity to meet the objection. *Garcia v. La Farge*, 119 N.M. 532, 540, 893 P.2d 428, 436 (1995). Both of the purposes are honored by finding preservation on this record. There is no evidence of any thought or effort by Neil to "sandbag" the trial court or Plaintiffs. There was simply inartful practice. Looking beyond the muddle does not improp-

erly prejudice Plaintiffs or pose a danger to the orderly, efficient processing of cases through the courts.

██ {13} Finding that the issue was adequately preserved also complies with the New Mexico appellate courts' approach to "construe the rules of appellate procedure liberally so that causes on appeal may be determined on their merits." *Danzer v. Prof'l Insurors, Inc.,* 101 N.M. 178, 180, 679 P.2d 1276, 1278 (1984), (cited with approval in *Aken v. Plains Elec. Generation & Transmission Coop., Inc.,* 2002–NMSC–021, ¶ 10, 132 N.M. 401, 49 P.3d 662 (2002)).

{14} Finally, and alternatively, the Rules of Appellate Procedure specifically authorize this Court, at our discretion, to review an issue that was not properly preserved if the issue is of "general public interest." Rule 12–216(B); *see also Pineda v. Grande Drilling Corp.,* 111 N.M. 536, 539, 807 P.2d 234, 237 (Ct.App.1991) (holding that question involving procedure required of workers' compensation agency to promulgate valid rules was of general public interest); *United Salt Corp. v. McKee,* 96 N.M. 65, 67, 628 P.2d 310, 312 (1981) ("The proper procedure to be followed in cases involving multiple defendants is an issue of substantial public interest."). We view the issue presented as one that involves a matter of general public interest and is likely to be repeated in other situations. *Gracia v. Bittner,* 120 N.M. 191, 196, 900 P.2d 351, 356 (Ct.App.1995).

## DISCUSSION

### A. Rules 1–055(C) and 1–060(B)

██ {15} As noted, Neil cited Rules 1–055(C) and 1–060(B) in her motion to set aside the July 14 "default judgment." Prior to resolving the question whether the trial court abused its discretion in denying Neil's motion, we must determine whether the Rule 1–055(C) or Rule 1–060(B) applies. This in turn depends on whether the "default judgment" entered by the trial court is in any sense a final judgment or whether it is more akin to a non-final entry of default. Resolution of these issues requires us to interpret the Rules. Interpretation of Supreme Court-promulgated rules presents questions of law which we consider de novo. *State v. Erickson,* 2002–NMCA–058, ¶ 6, 132 N.M. 258, 46

P.3d 1258; *State v. Roman,* 1998–NMCA–132, ¶ 8, 125 N.M. 688, 964 P.2d 852.

Rule 1–055 provides:

A. **Entry.** When a party against whom a judgment for affirmative relief is sought has *failed to plead* or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk *shall enter the party's default.*

(Emphasis added.)

Rule 1–055(B) provides:

If, in order to enable the court to *enter judgment or to carry it into effect, it is necessary to ... determine the amount of damages ...* the court may conduct such hearings ... as it deems necessary and proper and shall accord a right of trial by jury to the parties entitled thereto.

(Emphasis added.)

Finally, Rule 1–055(C) states:

For good cause shown, the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside *in accordance with Rule 1–060[B].*

(Emphasis added.)

{16} Several New Mexico cases have stressed that entry of default is procedurally distinct from entry of judgment by default. *Marinchek v. Paige,* 108 N.M. 349, 350 n.1, 772 P.2d 879, 880 n.1 (1989); *Schmider v. Sapir,* 82 N.M. 355, 357–58, 482 P.2d 58, 60–61 (1971); *Rogers v. Lyle Adjustment Co.,* 70 N.M. 209, 211–12, 372 P.2d 797, 799 (1962); *Armijo v. Armijo,* 98 N.M. 518, 520, 650 P.2d 40, 42 (Ct.App.1982) (noting that liability and damages are different and separate concepts). Entry of default has been described as a "formal matter which serves to invite the court's attention to a party's omission to plead or otherwise defend and to the fact that the case is ripe for entry of judgment by default." *Marinchek* 108 N.M. at 350 n.1, 772 P.2d at 880 n.1. By its terms, Rule 1–055(C) requires requests for relief from entries of default to be considered under a "good cause shown" standard.

{17} On the other hand, New Mexico cases have stressed that default judgments are to

be deemed final judgments. *Xorbox v. Naturita Supply Co.,* 101 N.M. 337, 340, 681 P.2d 1114, 1117 (1984). As final judgments they are subject to the trial court's control for a period of thirty days pursuant to NMSA 1978, Section 39–1–1 (1917). *Marinchek,* 108 N.M. at 351, 772 P.2d at 881. Thereafter default judgments must be set aside in accordance with Rule 1–060(B). *Id.* at 351, 772 P.2d at 881.

 {18} Rule 1–060(B) states:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a *final judgment,* order or proceeding . . . .

(Emphasis added.) By its terms, Rule 1–060(B) applies only to "final judgments." Should the "default judgment" entered by the trial court be deemed a final judgment for purposes of Rule 1–060(B)? We hold that it should not for the simple reason that it did not include—and properly could not include—any provision for damages when it was entered.

{19} Rule 1–055(B), as well as established case law, clearly states that the trial court must hold a hearing to determine the amount of any unliquidated damages before it may enter a default judgment. *Armijo,* 98 N.M. at 520, 650 P.2d at 42. Our Rule 1–055 is identical in this regard to Rule 55 of the Federal Rules of Civil Procedure and the federal cases agree with New Mexico on this proposition. *Hagen v. Sisseton–Wahpeton Cmty. Coll.,* 205 F.3d 1040, 1042 (8th Cir. 2000) (holding that district court's order granting motion for default judgment was erroneous " 'because a default judgment cannot be entered until the amount of damages has been ascertained' ") (quoting *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 97 (2nd Cir.1993)); *Dow Chem. Pac. Ltd. v. Rascator Mar., S.A.,* 782 F.2d 329, 336 (2nd Cir.1986) (stating that "the so-called 'DEFAULT JUDGMENT' entered . . . was not itself, and was not intended to be, a final judgment on the claims"); *see also* 10 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE ¶ 55.22[.1] (3rd ed. 1997) ("Following the determination that there has been a default in a case involving unliquidated damages, a hearing must be

held to determine the amount of damages . . . .").

 {20} New Mexico decisions have also recognized that a default judgment or order which reserves the issue of damages for future determination is not a final judgment for purposes of appeal. *Cole v. McNeill,* 102 N.M. 146, 147, 692 P.2d 532, 533 (Ct.App. 1984). Finality for purposes of appeal need not be entirely congruent with finality for purposes of Rule 1–060(B). However, the preference for adjudication on the merits and the values of predictability and judicial economy in dealing with interlocutory orders—or judgments—counsel in favor of a similar definition and treatment.

 {21} We determine that the "default judgment" entered by the trial court was not a final judgment as that term is used in Rule 1–060(B). As such, Rule 1–060(B) did not apply to Neil's motion for relief. Rather, Rule 1–055(C) applied because the "default judgment" entered was akin to an entry of default. Thus, we hold that the Rule 1–055(C) "good cause" standard should be applied to all default orders which leave the issue of damages undetermined. Other jurisdictions agree with our holding on the same rationale. For example, the Maine Supreme Court in *Erskine v. Commissioner of Corrections,* 682 A.2d 681, 684 (1996) held:

The trial court properly relied on Rule 55(c) in vacating the default judgment. Because a judgment on liability was entered by the court against the defendants as a sanction for their noncompliance with discovery obligations, we apply the lesser "good cause" standard of review articulated in Rule 55(c) in our review of its decision and not the higher "excusable neglect" standard set forth in Rule 60(b). *Carruthers v. Mopeds of Maine, Inc.,* 539 A.2d 1104, 1105 (Me.1988). The entry of a default judgment on the issue of liability, pending a hearing on damages, is not a final judgment for purposes of Rule 60(b). *Id.* at 1106; *Michaud v. Mutual Fire, Marine & Inland Ins. Co.,* 505 A.2d 786, 790 (Me.1986). In *Michaud* we held that the entry of a default judgment as to liability in a medical malpractice action pending a hearing on damages constituted an entry

of a default, subject to being set aside on a showing of good cause rather than excusable neglect. *Id.* at 790 (citing *Cocklereece v. Moran,* 500 F.Supp. 487, 490–91 (N.D.Ga.1980) ("The entry of default is the equivalent of 'default judgment as to liability.' ")). In so doing, we reiterated the familiar rule, applicable to the instant matter, that "a final default judgment cannot be entered until the amount of damages has been ascertained." *Michaud,* 505 A.2d at 790; *see also Carruthers,* 539 A.2d at 1105–06 (insurer did not demonstrate "good cause" to justify setting aside a default judgment entered on the issue of liability alone). In this case, damages had not been assessed at the time of the motion for relief, and the trial court properly applied a good cause standard in setting aside the sanction.

{22} We are aware, of course, that in appropriate cases entry of default and a default judgment may be entered simultaneously and by a single instrument. *Rogers,* 70 N.M. at 212, 372 P.2d at 799. In such instances the trial court should be "liberal" in determining whether the default judgment should be set aside. *Herrera v. Springer Corp.,* 85 N.M. 6, 11, 508 P.2d 1303, 1308 (Ct.App. 1973), *rev'd on other grounds,* 85 N.M. 201, 202, 510 P.2d 1072, 1073 (1973). The trial courts should be liberal in determining what constitutes a good excuse and what is a meritorious defense. *Id.* As our Supreme Court observed in *Franco v. Federal Building Serv. Inc.,* 98 N.M. 333, 334, 648 P.2d 791, 792 (1982), when considering a motion made under Rule 1–055(C), a trial court should be more liberal than under Rule 1–060(B) and resolve all doubts in favor of trial on the merits.

**B. Discretionary Authority under Rule 1–055(C)**

{23} As noted previously, the trial court grounded its ruling on Rule 1–060(B). It thus applied an incorrect standard. That is grounds enough for reversal. The further question is whether we should decide if the default should be set aside or remand to the trial court to consider the issue under the correct standard. Given the clarity of the facts, we have determined to decide the issue here.

{24} Generally, before a trial court will set aside an entry of default, the defendant must demonstrate that there was "good cause" for failing to answer, as well as the existence of a meritorious defense. *Franco,* 98 N.M. at 334, 648 P.2d at 792. There must also not be any intervening equities that would render setting aside of the default inequitable. *Chase v. Contractors' Equip. & Supply Co.,* 100 N.M. 39, 45, 665 P.2d 301, 307 (Ct.App.1983). This requirement is less than that required to set aside a final judgment under Rule 1–060(B). In *Franco,* our Supreme Court clearly articulated the reason for the lesser standard: under Rule 1–060(B) the courts must balance the policy favoring trials on the merits with the conflicting policy favoring the finality of judgments. *Franco,* 98 N.M. at 334, 648 P.2d at 792; *see also Springer Corp.,* 85 N.M. at 203, 510 P.2d at 1074. That conflict does not exist under Rule 1–055(C) because an entry of default is not equivalent to a final judgment. *See Franco,* 98 N.M. at 334, 648 P.2d at 792.

{25} A trial court is vested with discretion in deciding whether to set aside a default. In assessing the proper exercise of that discretion, certain propositions should be kept in mind. First, default judgments are not favored and, generally, causes should be tried on their merits. *Rogers,* 70 N.M. at 213, 372 P.2d at 800. Because of this preference for trial on the merits, a slight abuse of discretion is sufficient to justify reversal of the order. *Springer Corp.,* 85 N.M. at 203, 510 P.2d at 1074. Second, claims for large sums of money should not be determined by default judgments if it can be reasonably avoided. *Id.* This concern is broad enough to encompass cases in which the consequences of default are severe or the rights affected substantial. Third, while not downplaying the importance of orderly procedure and judicial economy, the courts must not allow the goal of judicial economy to become an overriding factor.

{26} Finally, our Supreme Court has observed that the "spirit" of Rule 1–055(B) counsels that a party seeking entry of default or default judgment against parties with

whom it is in contact, about whose whereabouts are known, and to whom it even represented that no default judgment would be entered during negotiations should give notice of intent to seek a default. *Dean Witter Reynolds, Inc. v. Roven,* 94 N.M. 273, 274, 609 P.2d 720, 721 (1980).

### C. Good Cause Shown

{27} As previously stated, the "good cause" standard of Rule 1–055(C) is broader and more liberal than the Rule 1–060(B) "excusable neglect" standard. For this reason, even where the neglect giving rise to a default is not, strictly speaking, excusable it still may be appropriate to set aside an entry of default.

{28} In *Chase,* the court focused on whether the conduct that led to the entry of default was negligent or intentional. 100 N.M. at 43, 665 P.2d at 305. The court reasoned that conduct that does not show an intent to delay court proceedings or demonstrate that delay was part of the trial attorney's litigation strategy is often legally sufficient to meet the Rule 1–055(C) good cause standard. *Chase,* 100 N.M. at 44, 665 P.2d at 306. A litigant's negligent conduct should be considered in relation to the circumstances connected to the delay and under the applicable "more liberal" standard of good cause, the trial court often should set aside an entry of default that is a result of a party's negligence. *Id.* at 43, 665 P.2d at 305.

{29} In interpreting Rule 1–055(C) the *Chase* court focused on whether the conduct constituted contumacious conduct, intentional tactical delay, or willful disregard for deadlines and procedural rules. Trial judges should set aside non-final default judgments when the movant's conduct constitutes marginal and negligent failures to comply with the applicable rules of procedure.

### D. Meritorious Defense

{30} Our Supreme Court has stated that in reviewing a claimed meritorious defense the object "is to ascertain whether there is some possibility that the outcome of the suit after trial will be different from the result achieved by default." *Sunwest Bank*

*of Albuquerque v. Roderiguez,* 108 N.M. 211, 214, 770 P.2d 533, 536 (1989). To establish the existence of a meritorious defense sufficient to warrant setting aside a default judgment, the movant must also proffer some statement of underlying facts in support of the defense. *Id.*

### E. Intervening Equities

{31} In *Chase* we discussed the impact of intervening equities on a motion to set aside an entry of default. 100 N.M. at 45, 665 P.2d at 307. We did not provide a general definition of intervening equities in *Chase.* We did stress that adverse financial consequences to the plaintiff flowing from delays caused by setting aside an entry of default are not by themselves sufficient to preclude relief under Rule 1–055(C). *Id.* at 45, 665 P.2d at 307. The *Chase* court noted that the most common types of prejudice resulting from setting aside of an entry of default are delay expenses, the increased expenses caused by the Rule 1–055 issue itself, and the risk of increased difficulty in collecting a future judgment. *Chase,* 100 N.M. at 46, 665 P.2d at 308. The Court held that in some instances it may be appropriate to limit the effect of this type of prejudice by imposing costs or requiring a bond in the amount of the judgment being set aside as a condition of setting aside the default. *Id.* In our view, *Chase* provides sufficient guidance to trial judges in evaluating and minimizing intervening equities under Rule 1–055(C).

### F. Merits

{32} The undisputed facts in this case are straightforward. Neil was served with the summons and complaint on June 11, 1998, and promptly forwarded them to her insurance company. The insurance claim adjuster, who received them on June 15, erred in calculating the due date for the answer as July 15, rather than July 13. As a result, she failed to deliver the summons and complaint to Neil's attorney until July 14. Neil thus answered the complaint one day late. Under New Mexico law the conduct of Neil's insurance adjuster is imputed to her. *Adams v. Para–Chem S. Inc.,* 1998–NMCA–161, ¶ 9, 126 N.M. 189, 967 P.2d 864. How-

ever, Plaintiffs point to no evidence in the record suggesting that Neil's failure to answer was the result of anything other than human error. There was no showing of any intent to delay the litigation.

{33} With respect to Neil's meritorious defense, the motion to set aside the default argued that Neil had no notice of any defect in the property and that the issues of whether a dangerous condition existed and whether the owner of the premises should have known of a dangerous condition were jury questions. In support of the motion, Neil filed an affidavit asserting that the apartment where the accident took place had been inspected annually by the Town of Bernalillo Housing Authority since 1992, as part of a U.S. Department of Housing and Urban Development Program. She attached to her affidavit a copy of the 1995 annual inspection report. Section 6 of the Report shows that the Housing Authority inspected the condition of the stairs, rails, porches and deck of the apartment in February 1995, four months before the accident, and found them to be sound and free from hazards. These materials were sufficient to show that Neil could make a reasonable defense argument of reasonable inspection and lack of notice requiring jury determination. *See Klopp v. Wackenhut Corp.*, 113 N.M. 153, 824 P.2d 293 (1992) (clarifying the standard of care owed by owners and occupiers of property to visitors in light of the adoption of the comparative negligence doctrine).

{34} Plaintiffs do not argue that any intervening equities weigh against setting aside the entry of default. However, when an answer is filed a single day late, as in this case, a legally sufficient showing of intervening equities to prevent the setting aside of an entry of default should be difficult to establish.

### G. Jury Trial on Damages

{35} Neil also appeals the trial court's denial of her request for a jury trial on the issue of damages in this case. However, she acknowledges that this Court need not reach this issue if we reverse the trial court's decision denying the motion to set aside the default. Since we have reversed the decision denying the motion to set aside the default, Defendant will be allowed to answer and may take necessary steps to insure the jury trial she wishes to have. We leave for another day the decision regarding whether a jury trial on damages is required when a default judgment is entered on liability due to the failure to timely answer the complaint.

### CONCLUSION

{36} We reverse the trial court's denial of Neil's motion to set aside the entry of default and its award of damages and remand this case for a trial on the merits.

{37} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and IRA ROBINSON, Judges.