2003-NMCA-036

62 P.3d 1211

Katherine C. GANDARA,
Petitioner–Appellee,

v.

Jesse L. GANDARA, Respondent–
Appellant.

No. 21,948.

Court of Appeals of New Mexico.

Oct. 22, 2002.

Richard V. Earl, Albuquerque, NM, for Appellee.

Eddie Gallegos, Albuquerque, NM, for Appellant.

## OPINION

WECHSLER, Judge.

{1} We address the notice requirements of Rule 1–055 NMRA 2002 when a party files an answer after the entry of default, but before the entry of a default judgment. Respondent Jesse L. Gandara (Husband) appeals from the district court's denial of his motion to set aside a decree of dissolution of marriage entered based on his default. Husband contends that the district court abused its discretion in denying his motion because: (1) the default decree was entered without the notice required under Rule 1–055(B) and, therefore, Husband was denied due process of law; and (2) the requirements for setting aside the default decree under Rule 1–060(B) NMRA 2002 have been satisfied. We hold that under Rule 1–055(B), Husband's attorney had "appeared in the action" and, therefore, Husband was entitled to a three day written notice prior to the hearing on Wife's application for default. Because the applicable legal test is whether there was "good cause" under Rule 1–055(C) to set aside the clerk's entry of default, we need not reach the issue of whether the default decree should be set aside on Rule 1–060(B) grounds. We reverse the denial of the motion to set aside the decree and remand for further proceedings.

### Relevant Facts and Procedural Background

{2} The parties were married on July 24, 1984. They have one minor child (Child). Petitioner Katherine C. Gandara (Wife) filed a petition for dissolution of marriage on February 24, 2000. After efforts to personally serve Husband failed, Wife effected service by posting at the last known address of Husband in Houston, Texas on March 8, 2000. Wife filed a copy of the summons and the return of service on March 17, 2000. On March 21, 2000, Wife's attorney, Richard Earl, filed an affidavit certifying that he had mailed the petition documents to Husband at his last known address. Husband does not contest the validity of service of process of the petition documents.

{3} On March 21, 2000, Earl had a telephone conversation with an attorney, Robert Thomas, who advised Earl that he would be representing Husband if Husband's check cleared. Earl told Thomas that Husband was not yet in default. On April 13, 2000, Earl had another telephone conversation with Thomas, who indicated that he would not be representing Husband because Husband's check had not cleared. Earl advised Thomas that he intended to proceed with a default against Husband "forthwith."

{4} On April 18, 2000, Husband contacted his present counsel, Eddie Gallegos, to discuss the pending petition. Gallegos received the pleadings by mail on April 19, 2000. On

Thursday, April 20, 2000, Gallegos telephoned Earl and asked for an extension of time to file an answer. At the hearing on the motion, Earl stated: "[Gallegos] told me he had talked to [Husband] and thought he would be representing [Husband]." When the district court questioned Earl about the conversation later in the hearing, Earl reiterated:

> [Gallegos] said he would be representing [Husband] and would be filing a response to the petition. I then related to him what had occurred between Mr. Thomas and myself and that I had talked to Mr. Thomas that day and that he might want to consider whether or not he was going to get paid in representing [Husband]. Mr. Gallegos said to me, well, I deposited his check. I guess I'll find out if it clears. I said, well, maybe we can hold off on a default until sometime next week and see whether his check clears or not. If it doesn't, I'll default him. And he said, okay. That's fine.

{5} That same day, Earl called Wife and told her about his conversation with Gallegos. Wife would not agree to any extension of time or any further delay whatsoever in proceeding against Husband. Earl then called Gallegos and told him that Wife would not agree to an extension of time to file an answer and that he [Earl] would be seeking a default against Husband the following day, Friday, April 21, 2000.

{6} On Friday morning, April 21, 2000, Earl filed a motion for default decree of dissolution of marriage. He also filed, among other documents, an amended affidavit indicating that he had mailed the summons and petition to Husband at his last known address on March 21, 2000, and a clerk's certificate as to the state of the record, indicating that as of April 21, 2000, "no appearance nor any response or other pleading to the Petition for the said Respondent has been filed in my office of record." That same day, Earl delivered the motion for default decree of dissolution of marriage, the affidavit of non-military service, certificate as to the state of the record, and the original default decree of dissolution of marriage to the district judge's office. Earl did not serve a copy of the motion for default decree on Gallegos.

{7} On Monday, April 24, 2000, Gallegos filed Husband's answer to the petition for dissolution of marriage. Gallegos certified that he mailed a copy to Earl that same day. On Tuesday morning, April 25, 2000, Earl checked to see whether the judge had signed the default decree, and finding it signed, filed the default decree of dissolution of marriage. Earl mailed endorsed copies of the default decree documents directly to Husband in Houston, Texas on Tuesday, April 25, 2000, because, as he stated at the hearing, "at that point I still had nothing official from Mr. Gallegos that he was representing [Husband]." Later on Tuesday, April 25, 2000, Earl received a copy of Husband's Answer that had been filed on Monday, April 24, 2000. On Thursday, April 27, 2000, Earl filed a certificate of mailing stating that on April 25, 2000, he served endorsed copies of the default decree documents on Husband by mailing to his last known address in Houston, Texas.

{8} On May 25, 2000, Gallegos telephoned Earl to discuss settlement. Earl told Gallegos that the default decree had been entered on April 25, 2000. Gallegos stated that he had not known about the default decree and that Earl's statement was the first time he had heard about it. Also on May 25, 2000, Gallegos filed Husband's motion to set aside the default decree of divorce and request for hearing. Wife responded. The hearing on the motion to set aside default decree was held on October 19, 2000. On December 4, 2000, the district court entered an order denying Husband's motion. The court found that Husband: had adequate notice of the proceedings; had failed to timely file an answer, response, or responsive motion to the petition; and had not established sufficient grounds under Rule 1–060 to set aside the default decree. The court retained jurisdiction to modify child custody and child support. Husband appealed.

*Standard of Review*

{9} A grant of default judgment or of a motion to set aside a default judgment rests within the sound discretion of the dis-

trict court. *Gallegos v. Franklin,* 89 N.M. 118, 122, 547 P.2d 1160, 1164 (Ct.App.1976); *see also Hubbard v. Howell,* 94 N.M. 36, 38, 607 P.2d 123, 125 (1980). However, because default judgments are generally disfavored, "[a]ny doubts about whether relief should be granted are resolved in favor of the defaulting defendant" and, "in the absence of a showing of prejudice to the plaintiff, causes should be tried upon the merits." *Dyer v. Pacheco,* 98 N.M. 670, 673, 651 P.2d 1314, 1317 (Ct.App.1982) (internal quotation marks and citation omitted). In determining whether there has been an abuse of discretion, "our review of the application of the law to the facts is conducted de novo. Accordingly, we may characterize as an abuse of discretion a discretionary decision that [is] premised on a misapprehension of the law." *N.M. Right to Choose/NARAL v. Johnson,* 1999–NMSC–028, ¶ 7, 127 N.M. 654, 986 P.2d 450 (alteration in original)(internal quotation marks and citations omitted).

*Arguments on Appeal*

■ {10} Husband argues that the default decree should be set aside because Husband filed an answer to the petition on April 24, 2000, before the default decree was filed on April 25, 2000. He contends that the general policy that weighs against default judgments in favor of adjudication on the merits compels setting aside the decree in this case. Husband further argues that Gallegos, as Husband's representative, should have been served with written notice of the application for default decree because, as of their telephone conversations prior to Wife's filing of the motion for default decree, Wife's attorney, Earl, knew Gallegos, was representing Husband. As Gallegos argued at the hearing on the motion to set aside the default decree, Earl:

> knew I was in the case, he knew I was talking to [Husband], [Earl] knew I was representing him. Even though we're talking, [Earl] sends documents to [Husband] knowing full well it's not getting there. Sometimes it is, sometimes it isn't. . . .
>
> . . . . [W]e're practicing here, . . . we're working in good faith, and there was a full

knowledge that if nothing else, I could have gotten the motion, I could have responded to the motion for default. I never got it. It goes off to Texas. I'm talking to him. It didn't go to me. I think that's kind of like—the rules are made to make us appear on the merits, not to just try to play gottcha.

{11} Wife admits that notice of the motion for default decree was not served on Husband's attorney and contends that none was required stating: "[N]either Husband nor his attorney took any timely action so as to be entitled to notice." Wife contends that Husband was not entitled to notice because the answer to the petition was filed after the clerk had entered a default. Additionally, Wife asserts that the telephone conversations between the two attorneys do not "rise to a constructive appearance" entitling Husband to notice under Rule 1–055(B). Wife also argues that Gallegos' office is two blocks from the courthouse and that in order to be entitled to notice as Husband's representative, Gallegos should have filed an entry of appearance the same day as the two telephone conversations, especially after Earl informed Gallegos that Wife would not agree to an extension of time or wait to file the motion for default decree. As Earl argued at the hearing on the motion: "This was not late in the afternoon. He could have faxed me an entry of appearance. He could have faxed me a response. None of those things happened." Wife also argues that her attorney sent copies of the decree directly to Husband because Earl still did not have anything official from Gallegos that he was representing Husband at that time. Wife points out that Gallegos further delayed filing the motion to set aside for over a month after Earl mailed the decree to Husband. Finally, Wife argues, and the district court agreed, that Husband has no meritorious defense and that no mistake, inadvertence, fraud, or other reason under Rule 1–060(B) would justify setting aside the default decree under the facts of this case.

*Rule 1–055*

*Rule 1–055(A)*

{12} Rule 1–055(A) states:

**Entry.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.

{13} There is a distinction between entry of default by the clerk and entry of default judgment by the court. *See DeFillippo v. Neil,* 2002–NMCA–085, ¶ 27, 132 N.M. 529, 51 P.3d 1183. The clerk may enter default if there is a claim for affirmative relief and a failure to plead or otherwise defend on the part of the opposing party. *Schmider v. Sapir,* 82 N.M. 355, 358, 482 P.2d 58, 61 (1971). The clerk's entry of default "is a statement in appropriate form by the clerk as to the state of the record. It serves to invite the attention of the court to a party's omission to plead or otherwise defend, and to the fact that the case is ripe for the entry of judgment by default." *Id.* The clerk's entry of default is "merely a formal matter and is entered as a matter of course" when a party brings the appropriate facts to the attention of the clerk. *Rogers v. Lyle Adjustment Co.,* 70 N.M. 209, 211, 372 P.2d 797, 799 (1962).

*Rule 1–055(B)*

{14} Rule 1–055(B) states in pertinent part:

**Judgment.** Judgment by default may be entered as follows: in all cases the party entitled to a judgment by default shall apply to the court therefor;.... If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least three (3) days prior to the hearing on such application[.]

{15} Rule 1–055(B) deals with the question of notice. It requires that if a party or the party's representative "has appeared in the action," that party is entitled to three days' written notice and a hearing before the trial court can enter default judgment. *Rodriguez v. Conant,* 105 N.M. 746, 748, 737 P.2d 527, 529 (1987) (internal quotation marks and citation omitted); *Mayfield v. Sparton*

*Southwest, Inc.,* 81 N.M. 681, 682–83, 472 P.2d 646, 647–48 (1970).

{16} Our New Mexico Supreme Court initially adopted a liberal construction of the word "appearance" in Rule 1–055(B). Under this construction, an "appearance" to avoid a default judgment without notice could be shown by an affirmative act by the party that demonstrated knowledge of the suit and an intention to appear. *Mayfield,* 81 N.M. at 682–83, 472 P.2d at 647–48. Contacts between attorneys or a letter from one attorney to another could be sufficient. *See id.* However, in *Merrill v. Tabachin, Inc.,* 107 N.M. 802, 804, 765 P.2d 1170, 1172 (1988), our Supreme Court held that "awareness is not enough" and that "[t]he defaulted party must take some affirmative action to signify *to the court* an intention to submit to its jurisdiction in order to consider that he had made an 'appearance.'" *See also Baez v. S.S. Kresge Co.,* 518 F.2d 349, 350 (5th Cir.1975) (requiring responsiveness to plaintiff's formal court actions in order to establish a Rule 55(b) "appearance"); *Rutland Transit Co. v. Chicago Tunnel Terminal Co.,* 233 F.2d 655, 657–59 (7th Cir.1956) (stating that defendants who had not filed answer but had merely requested delays in entry of default judgment had not made "appearance" entitling them to notice of application for default).

{17} When Rule 1–055(B) requires three days' written notice and a hearing on a motion for default judgment but the notice is not given, the default judgment must be set aside as a matter of law. *Rodriguez,* 105 N.M. at 748, 737 P.2d at 529.

*Rule 1–055(C)*

{18} Rule 1–055(C) states:

**Setting aside default.** For good cause shown, the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 1–060.

{19} The purpose of the three-day notice requirement under Rule 1–055(B) is to allow the party to request to set aside the default (as opposed to the default judgment)

under Rule 1–055(C) and to request (from the court) an enlargement of time in which to plead in accordance with Rule 1–006(B) NMRA 2002. *Rogers,* 70 N.M. at 212, 372 P.2d at 799. Under Rule 1–055(C), the legal test for setting aside the clerk's entry of default is "good cause," as opposed to the strictures of the Rule 1–060(B) grounds for setting aside the district court's entry of default judgment (e.g., mistake, inadvertence, excusable neglect, fraud, or other reasons justifying relief, and a meritorious defense). *See DeFillippo,* 2002–NMCA–085, ¶ 27, 132 N.M. 529, 51 P.3d 1183.

### Application of Rule 1–055

{20} The question that we must answer is whether, under the facts of this case, Husband or his representative, Gallegos, had "appeared in the action" such that Husband was entitled to three days' written notice of hearing before the district court could enter the default decree.

{21} Gallegos called Earl on Thursday, April 20, 2000, prior to entry of default by the clerk of the court and prior to entry of the default decree by the district court. During that telephone conversation, Gallegos informed Earl that he represented Husband and asked Earl for an extension of time to file an answer to the divorce petition, which was already in default. This telephone call, initiated by Gallegos, acknowledged the lawsuit, included a statement of intention to appear, and requested an extension of time to answer the petition. However, these actions do not, as required by *Tabachin,* signify to the court an intention to submit to its jurisdiction in order to consider that Husband or his representative had made an appearance at that point in time, i.e., prior to entry of default by the district court clerk. *Tabachin,* 107 N.M. at 804, 765 P.2d at 1172.

{22} Gallegos filed Husband's answer to the petition with the district court on Monday, April 24, 2000. By doing so, he "appeared in the action" as Husband's attorney after the district court clerk's entry of default on Friday, April 21, 2000, but prior to the district court's entry of the default decree on Tuesday, April 25, 2000. Rule 1–055 anticipates this set of circumstances. It re-

quires that if a party or the party's representative has appeared in the action, entry of default judgment by the court (as opposed to entry of default by the clerk of the court) can only follow upon three days' prior written notice of a hearing. *See Costin Eng'g Consultants, Inc. v. Latham,* 164 F.R.D. 521, 523 (D.Colo.1996) (stating that "[t]he purpose of the notice requirement is to protect those parties who, although delinquent in filing pleadings within the time periods specified, have indicated a clear purpose to defend by entry of their appearance," even when the entry of appearance was filed only minutes before the filing of the default judgment and counsel for party moving for default could not have known that the appearance had been made until after the default judgment had been entered).

{23} Finally, while the strict criteria of Rule 1–060(B) are used when setting aside an entry of default judgment by the trial court, Rule 1–055(C) merely requires the use of a "good cause" standard when setting aside the entry of default by the district court clerk. *See DeFillippo,* 2002–NMCA–085, ¶¶ 27–29, 132 N.M. 529, 51 P.3d 1183; *see also Rasmussen v. W.E. Hutton & Co.,* 68 F.R.D. 231, 233 (N.D.Ga.1975) (stating that a motion to vacate default judgment is subject to the strictures of Rule 60(b), whereas subdivision (c) of Rule 55 permits setting aside an entry of default upon showing of good cause); *United States v. Topeka Livestock Auction, Inc.,* 392 F.Supp. 944, 950 (N.D.Ind.1975)(noting that the basic arguments usually advanced in support of motion to set aside a default, i.e., sufficient excuse, quick action, and allegation of meritorious defense, are the same as when relief is sought from a default judgment; however the tests are less stringently applied in the case of a default entry).

{24} Because the applicable legal test for setting aside the clerk's entry of default is whether there is "good cause" rather than the Rule 1–060(B) grounds applied by the district court for setting aside the default decree, we reverse the district court and remand for a hearing on whether there was "good cause" to set aside the district court clerk's entry of default. Accordingly, we

need not reach the second issue on appeal, whether the requirements for setting aside the default decree under Rule 1–060 have been satisfied.

*Conclusion*

{25} Because Gallegos, as Husband's attorney, had "appeared in the action" prior to the entry of the default decree, Rule 1–055(B) entitled Husband to written notice of a hearing at least three days prior to entry of the default decree by the court in this case. We reverse the district court's order denying the motion to set aside the default decree. *Rodriguez,* 105 N.M. at 748, 737 P.2d at 529 (holding that when the three days written notice and hearing on a motion for default judgment is required by Rule 1–055(B) but is not given, the default judgment must be set aside as a matter of law). On remand, the court shall set the default decree aside and hold a hearing upon at least three days' written notice to determine whether the clerk's entry of default should be set aside for "good cause."

{26} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and JONATHAN B. SUTIN, Judges.