411 P.2d 129

**Richard F. McKEAN, Plaintiff and Respondent,**

v.

**MOUNTAIN VIEW MEMORIAL ESTATES, INC., a Utah corporation, and Memorial Estates Security Corporation, a Utah corporation, Defendants and Appellants.**

**No. 10367.**

Supreme Court of Utah.

Feb. 15, 1966.

Lorin N. Pace, Salt Lake City, for appellants.

Watkins, Wilkins & Pritchett, Salt Lake City, for respondent.

## CROCKETT, Justice.

Defendants, Mountain View Memorial Estates, Inc. and Memorial Estates Security Corporation, appeal from an order denying their motion to set aside a default judgment against them based upon their alleged breach of a contract for the purchase of real property from the plaintiff, Richard F. McKean.

By the contract referred to on March 9, 1961 the defendants had agreed to buy from plaintiff 56.87 acres of land at $5500 per acre, totalling $312,785. This land had been obtained by the plaintiff in several parcels for the purpose of selling it to the defendants to augment their cemetery at 6500 South Redwood Road in Salt Lake County. Approximately $38,000 was to be paid on or before November 1, 1962 and one-fifth of the balance was to be paid on that date for each of the next five years. Plaintiff commenced this suit in February 1964 alleging delinquency in payments and seeking forfeiture of the contract. Defendants answered contesting the claimed right of forfeiture.

The foregoing is merely a cursory reference to the facts to indicate the nature of the controversy. We are not here concerned with the merits of the case but only with the question as to whether the default judgment should have been set aside.

At the time of the pre-trial in December 1964 disagreement between the parties as to issues was such that the trial court continued the pre-trial hearing until Saturday, January 9, 1965, at 9 a. m. when the parties were ordered to be present with their witnesses. Two days before that time arrived the clerk telephoned counsel for both parties and informed them that instead of a further pre-trial conference as originally planned, the judge had set the matter for trial.

On the next day after this notification, Friday, January 8, defendants' then counsel (Mr. John Elwood Dennett, different from counsel who here represent them) attempted to obtain a stipulation from plaintiff's counsel for a continuance of the trial, giving as his reason that essential witnesses were not in the state, but plaintiff's counsel refused to so agree. Mr. Dennett then ad-

vised the lower court that he could not be ready for trial the next day and that if it was insisted upon he would attempt to obtain a writ of prohibition from the Supreme Court. The next morning, a Saturday, he appeared at this court at about 8:30 a. m. and conferred with one of the Justices. When it became apparent that he would be unable to obtain the writ he called the lower court at 8:55 a. m.; advised where he was, what he was doing; and that he would be a little late for the trial. When he arrived it was 9:27 and the proceeding was in progress. The court informed him that because he was not present when the trial began the defendants' pleadings had been stricken; that they no longer had any standing before the court; and that the case was being treated as a default.

The court proceeded to take evidence from the plaintiff. Defendants' counsel attempted to interpose objections to certain of the questions, but was admonished by the court to refrain from interrupting the proceedings. To his request to cross-examine plaintiff's witnesses the court stated:

"It is denied. You don't have any standing in the court. I don't know how I can make it any clearer. Your pleadings have been stricken. You saw fit not to be here at the time this started, * * *. Now, you can just keep out of this until I ask for your help. * * *"

After hearing the plaintiff's evidence, the court offered defendant's counsel the opportunity of participating in the determination of damages, which he declined. He was then for the first time allowed to make motions. His motions to strike the proceedings in the nature of a trial, to strike the default judgment, and to allow cross-examination of witnesses, and for a new trial, were all denied.

The object to be desired in this as in all cases is the searching out of the truth and doing justice between the parties in regard to the controversy between them. To carry out that purpose it is the policy of the law to favor a trial on the merits and to afford both sides a full opportunity to present their evidence and contentions as to disputed issues so they may be disposed of on substantial rather than upon technical grounds.[1] Accordingly courts should exercise caution in regard to default judgments and should be somewhat indulgent in setting them aside.[2] In order to achieve the objectives just stated it is sometimes necessary to look beyond what may appear to be ill-advised, or even irritat-

---

1. See Bunting Tractor Co. v. Emmett D. Ford Contractors, Inc., 2 Utah 2d 275, 272 P.2d 191; See a good statement by Justice Schottky in Ordway v. Arata, 150 Cal.App.2d 71, 309 P.2d 919.

2. See Heathman v. Fabian & Clendenin, 14 Utah 2d 60, 377 P.2d 189 and cases therein cited; Bunting Tractor Co. v. Emmett D. Ford Contractors, Inc., see footnote No. 1 supra.

ing or contemptuous conduct of counsel to the adjudication of the rights of the parties to the action. It should be kept in mind that their rights and any such misconduct of counsel are separate and distinct things which should be dealt with separately.[3]

 The purpose of a default judgment is to conclude litigation when a defendant fails to plead or otherwise defend an action.[4] In such circumstances its use is practical and salutary. However, it was never intended to be used as a means of disciplining attorneys who may be derelict in the performance of their duties. If such a course were followed it may do a grave injustice to the client by punishing him rather than the attorney who has done the wrong. This is not a case where the defendants had failed to defend. Issues had been raised by the pleadings and defendants' counsel, albeit 27 minutes late, even then and apparently without essential witnesses sought to participate in the trial and represent the defendants' interest with respect to proof adduced by the plaintiff; and proffered proof in support of the defendants' contentions, which were rejected. We are acquainted with no foundation in

law, either statutory or decisional, which would justify the entering of a default judgment and preventing the defendants from participating in a trial under circumstances shown here.[5]

Upon the basis of our discussion herein it is our opinion that the default should have been set aside and the defendants allowed a trial. We express no opinion upon the question of the conduct of Mr. Dennett as that is not part of the case upon which this appeal is based.

The default judgment is ordered set aside and the case is remanded for a trial on the merits. No costs awarded.

McDONOUGH and WADE, JJ., concur.

HENRIOD, Chief Justice (dissenting).

I dissent, suggesting that counsel for appellants, who is not counsel on this appeal, seems to have insulted the intelligence of the trial court, has used procedural maneuver to use this court for purpose of delay, and has accomplished by indirection a much longer delay than he possibly could

---

3. That willful absence from attending court may be treated as contempt see 17 C.J.S. Contempt § 25, p. 70.
4. See Rule 55, U.R.C.P.

5. As to impropriety of striking pleadings and entering default as punishment for contempt see Hovey v. Elliott, et al., 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215; see also an annotation on the subject in 14 A.L.R.2d 580 et seq.

have obtained by even the granting of the petition for writ of prohibition.

The trial court continued a pre-trial hearing for 10 days to a date certain and admonished counsel to get all his evidence and witnesses in court on that day. The hearing was scheduled for 9:00 a. m. The attorney came to the Supreme Court before 9:00 a. m. on a Saturday morning. This writer came to his office at about 9:00 a. m. and this attorney asked that the trial court be prohibited from going ahead with the trial. This writer, the only justice present at that time, refused such request, which was based on the assertion that counsel did not have his witnesses and evidence ready. He made no motion for continuance to the trial court.

In the opinion of this writer, I am convinced this attorney intentionally invited error, and was eminently successful in gaining his objective, as evidenced by the main opinion and the delay he engendered by an 11th hour employment of a questionable petition for writ of prohibition. Significantly, the record also indicates that his so-called "clients" were aware of everything, since this counsel appears to have been vice-president, director and treasurer of the Memorial Estates Security Corporation.

The trial court should be affirmed.

CALLISTER, J., does not participate.