665 P.2d 301

**John M. CHASE, Plaintiff-Appellee,**

v.

**CONTRACTORS' EQUIPMENT & SUPPLY COMPANY, INC., Defendant-Appellant.**

**No. 5937.**

Court of Appeals of New Mexico.

May 10, 1983.

Certiorari Denied June 2, 1983.

Alice Tomlinson-Lorenz, Gregory W. Chase, Miller, Stratvert, Torgerson & Brandt, P.A., Albuquerque, for defendant-appellant.

Robert W. Ionta, Glascock, McKim, Head & Kozeliski, P.C., Gallup, for plaintiff-appellee.

## OPINION

WOOD, Judge.

We identify defendant's different attorneys as follows: (a) the trial attorney who represented defendant through the trial date; (b) the motions attorney who represented defendant at motions subsequent to the trial date; and (c) the appellate attorney who represents defendant on appeal. This appeal involves the propriety of action taken by the trial court after the trial attorney was late for the scheduled trial. Our discussion is divided into: (1) procedure; (2) grounds for setting aside a default; and (3) conditions for reversal.

The complaint sought damages on various theories in connection with the purchase and repair of equipment. Plaintiff filed a jury demand. The trial court gave notice on March 26, 1982 that trial would commence at 9:00 a.m. on May 10, 1982. The trial attorney was not present at 9:00 a.m.; she arrived in the courtroom at approximately 9:40 a.m. By the time she arrived, the trial court had granted plaintiff's motion for a default and plaintiff had waived jury trial. The jury had been excused and damage testimony was being presented. At the conclusion of this evidence the trial court orally found that plaintiff's damages were $83,000.00. After subsequent motions were disposed of, judgment in that amount was entered in favor of plaintiff. Defendant appealed.

*Procedure*

At the scheduled trial time neither the trial attorney nor the defendant was present. At 9:00 a.m. the trial court had no information as to whether a defense would be presented or even whether there would be a trial appearance on behalf of defendant. Plaintiff's attorney informed the trial court that the trial attorney had been in town the evening before and named the motel at which the trial attorney was staying. At 9:20 a.m. the trial court instructed the court reporter to telephone the trial attorney, and this was done. The trial attorney explained that she had overslept and asked the court reporter what she should do. The court reporter informed the trial attorney that the court was considering entry of a default because of the nonappearance, and that the trial attorney should come to court immediately.

During the telephone conversation the trial attorney did not ask to speak to the judge and did not inform the court reporter that she was coming to court. Although the trial attorney did in fact come "immediately" to court (she made a trip of several miles in 20 minutes), there is no showing that the trial court was informed that the trial attorney was en route at the time it granted plaintiff's motion for default.

In light of the above circumstances there were three procedural options.

A continuance could have been granted. This was not a viable option to the trial court because the next available trial date (because of the trial court's schedule) was in August or September, 1982. Furthermore, the trial attorney did not ask for a continuance and there is no suggestion that there were grounds for a continuance.

Trial could have proceeded, on the merits, without the presence of defendant or the trial attorney. *Ranchers Exploration & Development Co. v. Benedict,* 63 N.M. 163, 315 P.2d 228 (1957). *See* 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 55.02[3], footnote 12 (2d ed. 1982), where it is stated: "The simple solution is for the district court to go forward at the time set for trial, receive evidence, and enter a judgment based on the record." This procedure prevents the absent party from benefiting by its absence. *See Ranchers Exploration, supra.* This procedure was not followed.

The trial court could proceed on the basis that defendant was in default. While this is a permissible procedure, it carries with it

the problems and issues directed to the default.

■ Plaintiff moved, and the trial court ruled, that defendant was in default because of the nonappearance of either defendant or the trial attorney. This ruling was proper. Even though defendant had entered an appearance and filed pleadings, defendant could be in default for failure to "otherwise defend," and this includes a failure to appear at trial. *See Schmider v. Sapir,* 82 N.M. 355, 482 P.2d 58 (1971); R.Civ.Proc. 55(a), N.M.S.A.1978 (1980 Repl. Pamp.); Moore, *supra,* ¶ 55.02[3].

■ The preceding paragraph involves entry of default and not a default judgment. Entry of a default judgment is governed by R.Civ.Proc. 55(b). Defendant, having appeared, was entitled to three days notice of plaintiff's application for entry of default judgment. *Mayfield v. Sparton Southwest, Inc.,* 81 N.M. 681, 472 P.2d 646 (1970). The purpose of the notice is to give the defaulting party time to seek to set aside the default. *Rogers v. Lyle Adjustment Company,* 70 N.M. 209, 372 P.2d 797 (1962). Plaintiff gave the required notice under R.Civ.Proc. 55(b).

On the day set for hearing the application for default judgment, the motions attorney appeared in opposition to the application and informed the trial court that the attorney had only recently been employed and would promptly be filing a motion to set aside the default. The trial court continued proceedings until the motion was filed. The application for default judgment and the motion to set aside default were heard at the same time on May 24, 1982. The application was granted and the motion was denied.

■ The appellate attorney argues that the procedure between the entry of default and the entry of default judgment was erroneous for two reasons.

First, it is argued that the damage testimony, heard by the trial court after entry of default, should have been presented to a jury. The appellate attorney contends that plaintiff's jury demand secured the right of jury trial to defendant, that plaintiff could not waive the right to jury trial without defendant's consent, and that defendant had not consented. This issue involves the interrelationship of R.Civ.Proc. 38(d), 52(a) and 55(b), N.M.S.A.1978 (1980 Repl.Pamp.).

Second, it is argued that the taking of damage testimony immediately after the entry of default deprived defendant of an opportunity to be heard on the damage issue. This contention has two parts: (1) whether defendant was entitled to notice of a hearing on the amount of damages, *see Gallegos v. Franklin,* 89 N.M. 118, 547 P.2d 1160 (Ct.App.1976) and Annot., 15 A.L.R.3d 586 (1967); and (2) whether defendant was deprived of a meaningful opportunity to participate because within the twenty minutes that elapsed between the court reporter's telephone call and the arrival of the trial attorney in the courtroom, the testimony of one witness as to damages had been concluded and the second and final witness as to damages was testifying when the trial attorney entered the courtroom.

The above two issues will not be considered. Neither issue was raised in the trial court. The appellate attorney raises these issues for the first time in the appeal. R.Civ.App. 11, N.M.S.A.1978.

*Grounds for Setting Aside Default*

The terminology used in connection with the matters heard on May 24, 1982 was often incorrect in that no distinction was made between a default and a default judgment. Accordingly, we again point out that the matters under consideration were plaintiff's application 'for a default judgment and defendant's motion to set aside the default. If the trial court erred in refusing to set aside the default, it also erred in entering judgment by default.

(a) Basis for deciding this issue.

Under R.Civ.Proc. 55(c), a default may be set aside "[f]or good cause shown". Moore, *supra,* ¶ 55.10[2] states:

A showing that would warrant the court in setting aside a default judgment, which represents final judicial action,

should, as a general proposition, warrant the court in setting aside the interlocutory entry of default; and a court might feel justified in setting aside a default on a showing that would not move it to set aside a default judgment.

To the extent that *Dyer v. Pacheco,* 98 N.M. 670, 651 P.2d 1314 (Ct.App.1982), may be read as holding that good cause for setting aside a default under R.Civ.Proc. 55(c) is synonymous with the exceptional circumstances for setting aside a default judgment under R.Civ.Proc. 60(b)(6), N.M.S.A.1978 (1980 Repl.Pamp.), *Dyer* is incorrect and is not to be followed. *Franco v. Federal Bldg. Service, Inc.,* 98 N.M. 333, 648 P.2d 791 (1982), states that the showing required for setting aside a default "is a lesser one than that required under Rule 60(b)."

■ The motions attorney proceeded in the trial court on the basis that the trial attorney's neglect was excusable, that there was a meritorious defense, and that there were no intervening equities. A showing of these grounds would provide a basis for setting aside a default judgment. In determining the sufficiency of the showing to set aside a default judgment "the trial court *must* apply a liberal standard." *Dean Witter Reynolds, Inc. v. Roven,* 94 N.M. 273, 274, 609 P.2d 720 (1980). Moore, *supra,* ¶ 55.10[1] and [2], points out that the same grounds apply to a motion to set aside a default. The difference is that a "more liberal" standard applies in determining the sufficiency of the showing to set aside a default. *Franco, supra,* explains:

We have held that in deciding a case under Rule 60(b), a trial court should be liberal in determining what is a good excuse and what is a meritorious defense. *See Springer Corporation v. Herrera,* 85 N.M. 201, 510 P.2d 1072 (1973). There, the court must balance the policy in favor of trials on the merits with the conflicting policy in favor of the finality of judgments. *See id.* Here, however, the former policy clearly prevails because the motion to set aside the entry of default is made before there is a final judgment. Therefore, in determining whether the

entry of a default should be set aside under Rule 55(c), a trial court should be more liberal and resolve all doubts in favor of the party declared to be in default. [648 P.2d at 792.]

We consider the contentions of the motions attorney under the "more liberal" standard, and decide whether the trial court abused its discretion in denying the motion.

(b) Negligent vs. intentional conduct.

■ The affidavit of the trial attorney admits that she was negligent in failing to be in court by 9:00 a.m. on the trial date. At oral argument, plaintiff contended that the conduct of the trial attorney was intentional rather than negligent. If the conduct of the trial attorney had been intentional, as opposed to negligent, then excusable neglect would not have been a ground for relief from the default. *See generally,* Moore, *supra,* ¶ 55.10[2]. The trial court did not rule that the conduct of the trial attorney was intentional; its ruling was that "good cause" had not been shown. The issue of intentional conduct is before us on the basis of the trial court's findings, and the facts that are undisputed. The question is whether the findings and undisputed facts require this Court to rule the conduct was intentional.

The excuse offered by the trial attorney was that she arranged for the motel at which she was staying to give her a wakeup call at 6:30 a.m., that she did not receive this call and, as a consequence, overslept. The trial attorney did not explain why oversleeping and being late for a 9:00 a.m. court appearance follows as a consequence of a failure to receive a telephone call at 6:30 a.m. However, our skepticism as to the validity of this consequence is not a consideration. The trial court found as a fact that the trial attorney "did not appear at the trial as scheduled for the reason that counsel did not recieve [sic] a wakeup call and, as a consequence, overslept." This was a permissible finding from the affidavits before the trial court. In light of the finding we cannot hold that the tardiness of trial counsel was intentional.

The affidavit of the trial attorney admits that she instructed the representative of defendant, and other witnesses, that they need not be in court until 10:00 a.m. "since counsel would be selecting the jury prior to that time." Our dubiety as to the appropriateness of this advice is also not a consideration. The trial court found that defendant did not appear at the time scheduled. It is uncontradicted that this was on the advice of the trial attorney. While the trial attorney's advice was intentional, that advice went only to the defendant. The trial attorney intended to appear at the time scheduled and participate in the jury selection. This does not show an intent to delay the court proceedings or that delay was part of the trial attorney's litigative strategy. See Moore, supra, ¶ 55.05[3]. Thus, the advice to the client does not show conduct which negates the trial attorney's admitted negligence.

The trial court found that the trial attorney "made no effort to talk to the Court to request that the entry of default be delayed or for a continuance until she could get to the Courthouse." The trial attorney sought advice from the court reporter and followed that advice; she came to court "immediately". The failure to request that entry of default be delayed and the failure to request a continuance does not, under the circumstances, require this reviewing Court to hold that these failures were conduct intended to delay the court proceedings when the trial court did not so conclude.

In summary, the matters relied on by plaintiff to show intentional conduct do not require a conclusion on our part that the conduct of the trial attorney was intended to delay the court proceedings.

(c) Whether the negligence was excusable.

The trial attorney admitted her negligence. The trial court found that the reason for the trial attorney's tardiness was oversleeping, and the oversleeping was a consequence of failing to receive a wake-up call.

The reason for the tardiness must be considered in relation to other circumstances connected with the trial. The trial attorney, a nonresident of Gallup, had come to Gallup where the trial was to take place. She conferred with plaintiff's attorney on the evening prior to the trial, told plaintiff's attorney where she was staying, and told him that defendant's witness would be present at 10:00 a.m. on the day of trial.

Plaintiff responds by again discussing the items relied on in seeking to have this Court hold that the trial attorney's conduct was intentional. Plaintiff's contention is that even if the trial attorney's conduct was negligent, as opposed to intentional, it was such that the trial court properly refused to consider the negligence as excusable.

The only conduct to be excused is the trial attorney's tardiness. Poor advice to the client and questionable procedure after being tardy do not weaken the showing that the tardiness was inadvertent. The trial preparation, the coming to the place of the trial, and the arrangements with defense witnesses support inadvertent tardiness.

The default judgment in *McKean v. Mountain View Memorial Estates, Inc.,* 17 Utah 2d 323, 411 P.2d 129 (1966), was set aside; the attorney telephoned the trial court at 8:55 a.m. and explained he would not be present at the 9:00 a.m. scheduled trial time because the attorney was seeking (unsuccessfully) a writ of prohibition from the Supreme Court; the attorney was 27 minutes late for the trial. *Supro Corp. v. Bridwell,* 361 So.2d 734 (Fla.App.1978), held that the failure of the attorney to appear at trial was excusable neglect where the excuse for the failure was that the attorney's file had been misplaced due to moving his residence. A new trial was granted in *Kirk v. Farmers Aerial Spraying Service, Inc.,* 496 S.W.2d 739, 742 (Tex.Civ.App.1973), where the attorney failed to appear for trial because "through an error and misunderstanding with his secretary . . . he had not been reminded of the trial setting."

Under the applicable "more liberal" standard, the trial court abused its discretion in

rejecting the claim of excusable neglect based on the attorney appearing in court 40 minutes late due to oversleeping as a result of the absent wake-up call.

(d) Meritorious defense.

■ The trial court made no specific ruling as to the existence of a meritorious defense, ruling only that good cause had not been shown. We summarize the showing made as to a meritorious defense.

1. As to the breach of warranty claim—lack of notice under the Uniform Commercial Code; plaintiff adequately inspected the item purchased; no express warranty and disclaimer of. any warranty.

2. As to the misrepresentation claim—statements made were true and no statement was the proximate cause of damage to plaintiff.

3. As to the negligent installation claim—no negligence and no proximate cause.

In addition, witnesses for defendant were identified and there was a generalized summary of the witnesses' testimony.

The foregoing information was contained in the trial attorney's affidavit which was submitted in support of the motion to set aside the default. Plaintiff asserts the above information failed to show a meritorious* defense because the affidavit "was legally incompetent". Plaintiff then attacks, in detail, the sufficiency of the contents of the affidavit. Plaintiff's argument is answered by the *Springer Corporation* cases. Defendant's showing as to a meritorious defense is quoted in *Herrera v. Springer Corporation*, 85 N.M. 6, at 12, 508 P.2d 1303 (Ct.App.1973). The showing was by an affidavit and by counsel's oral statement at the time of the hearing. *Springer Corporation v. Herrera*, 85 N.M. 201, 203, 510 P.2d 1072 (1973), states: "The statement by defendant alleging no negligence, and the further statement that the defendant was merely the delivering agent, would be sufficient information to allege a meritorious defense."

Plaintiff also states: "[S]ince the existence of a 'meritorious defense' was not specifically found [by the trial court], this must be regarded as a finding of fact against" defendant. The motions attorney requested findings consistent with the above summarized showing and requested the trial court to conclude that there was a meritorious defense. The requested conclusion followed from the requested findings. Under the showing made, the trial court's error was in failing to adopt the requested findings, because under *Springer Corporation v. Herrera, supra,* the showing sufficiently established the meritorious defense. In so holding we point out that the more liberal standard applies in deciding this issue. *Franco v. Federal Bldg. Service, Inc., supra.*

(e) Intervening equities.

■ The motion to set aside the default also involves the question of intervening equities. *Weisberg v. Garcia,* 75 N.M. 367, 404 P.2d 565 (1965); *see Springer Corporation v. Herrera, supra.* We do not suggest a general definition of this concept; rather, we consider plaintiff's factual claim that equitable considerations intervening between entry of the default and the hearing supports the trial court's denial of the motion.

Plaintiff's claim was based on delay in a final determination of the lawsuit. If the default were set aside there would be delay, and that delay would adversely affect plaintiff's financial position. The motions attorney recognized that delay would be prejudicial to plaintiff. The trial court remarked that because it was likely that there would be an appeal, whatever it decided, "we're looking at a time situation here that's not going to be in the best interest of Mr. Chase no matter how you look at it * * *."

The claim of intervening equities is based on delay in bringing the litigation to an end. The question is whether delay of this type, in itself, is sufficient to defeat the motion to set aside the default. The briefs cite no New Mexico decisions on this question and we have found none. Moore, *supra,* ¶ 55.10[1], footnote 20, states:

The mere fact that final disposition may be delayed is not itself sufficient to preclude relief under Rule 55(c), since by its very nature Rule 55(c) contemplates that some delay will result. However, when the plaintiff will be prejudiced by the delay, relief may be denied.

*Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242 (3rd Cir.1951), considered prejudice to plaintiff if a default judgment were set aside. *Tozer* seems to distinguish between intervening equities and prejudice to plaintiff: "The record here discloses that there are no intervening equities, and that no special harm would result to plaintiff except some delay in finally realizing satisfaction of its claim, should plaintiff be successful on trial." (*Id.* at 246.)

Plaintiff's claim is similar to the claim made in *Caruso v. Drake Motor Lines, Inc.*, 78 F.R.D. 586, 589 (E.D.Pa.1978):

> The plaintiffs claim that every day final judgment is postponed, they are seriously prejudiced because they are without employment, without a source of income to support themselves and their families * *. Delay in this litigation then seems to be the factor that the plaintiffs claim prejudices them; however, the delay factor is always present whenever default judgments are opened. [Citations omitted.] Perhaps, indeed, the delay involved here may cause these plaintiffs to suffer more harm than plaintiffs in other cases. However, upon balancing this delay, with the policy of allowing cases to proceed upon the merits, this Court concludes that the balance tips in favor of granting the defendant's motion.

*Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir.1969), states:

> It has been held in an extensive line of decisions that Rules 55(c) and 60(b) are to be liberally construed in order to provide relief from the onerous consequences of defaults and default judgments. [Citations omitted.] Any doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits.

New Mexico decisions are in accord: *Franco v. Federal Bldg. Service, Inc., supra; Dean Witter Reynolds, Inc. v. Roven, supra; Herrera v. Springer Corporation, supra.*

Without deciding whether a distinction should be made between "intervening equity" and "prejudice", we hold that the adverse financial consequences to plaintiff resulting from delaying the final disposition of this case is insufficient to defeat the motion for setting aside the default.

The trial court erred in denying the motion to set aside the default and in granting the application for default judgment.

*Conditions for Reversal*

The relief sought by defendant, setting aside the default, was equitable in nature. *Tozer v. Charles A. Krause Milling Co., supra.* Two equitable considerations were presented to the trial court by the plaintiff. One was the matter of costs, the other was prejudice to plaintiff by the delay if the default were set aside. The motions attorney stated: "[W]e recognize we were at fault. We recognize that we caused the court costs. We recognize that Mr. Chase has been prejudiced, but I think it would be an improper remedy to allow the default * * * to stand."

10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil 2d § 2700 (1983), states:

> The most common type of prejudice is the additional expense caused by the delay, the hearing on the Rule 55(c) motion, and the introduction of new issues. These burdens can be eased by requiring the defaulting party to provide a bond to secure costs, to pay court costs, or to cover the expenses of the appeal.
>
> Imaginative and flexible use of the power to impose conditions on the granting of relief under Rule 55(c) can serve to promote the positive purposes of the default procedures without subjecting either litigant to their drastic consequences. The use of conditions also permits the court to be responsive to the special problems raised by particular situ-

ations in order to avoid possible inequities.

■ It is equitable that costs be paid as a condition for setting aside the default. These costs include the amounts paid to the jurors, service fees, witness fees, cost of transportation of witnesses, and the costs of this appeal. There may be more; the items and amount of costs are to be determined by the trial court. These costs are to be paid by Leslie Rakestraw, the trial attorney. *See Wilcox v. Triple D Corp.,* 78 F.R.D. 5 (E.D.Va.1978).

It is also equitable that plaintiff not suffer adverse financial consequences because the default is set aside. Leslie Rakestraw, the trial attorney, is to pay a reasonable attorney fee for services of plaintiff's attorney in trial preparation that were, in essence, wasted as a result of her negligent conduct. This amount is to be determined by the trial court. *Wilcox v. Triple D Corp., supra.*

It is also equitable that plaintiff be protected from future adverse financial consequences due to delay resulting from setting aside the default. *See Littlefield v. Walt Flanagan and Company,* 498 F.2d 1133 (10th Cir.1974). A method of providing such protection is to require the defendant to post a bond. *Rasmussen v. W.E. Hutton & Co.,* 68 F.R.D. 231 (N.D.Ga.1975).

On what basis may a bond be required? A bond may be required so that the holder of a default judgment is not deprived of a payment or security obtained as a result of the default judgment. A bond may be required in order to place the parties in the position they were in prior to the default. And in extraordinary cases a bond may be required to restore the parties to the *status quo ante* the alleged wrong. However, a bond may not be required to make a disputed claim more secure than it was prior to action on a motion to set aside a default. *Wokan v. Alladin International, Inc.,* 485 F.2d 1232 (3rd Cir.1973); *Thorpe v. Thorpe,* 364 F.2d 692 (D.C.Cir.1966).

Requiring a bond in the amount of judgment being set aside involves two of the above concepts—returning the parties to their position prior to the default vs. making a disputed claim more secure. Plaintiff is not entitled to be made more secure; he should be protected from being made less secure; specifically, the hazard of collecting a future judgment should not be greater than the hazard of collecting the judgment vacated by this opinion.

In the discussion under "intervening equities" we pointed out that the policy of trial on the merits may outweigh the prejudice to a party when the question is whether the default should be set aside. Here, the issue is the prejudice to plaintiff because the default is set aside. It is equitable to protect plaintiff from prejudice even though there is uncertainty as to whether the prejudice will, in fact, occur. Specifically, it may be equitable to require a bond not exceeding the amount of the judgment being vacated to assure that a future judgment would not be uncollectable because of changes occurring between the present judgment and any future judgment. The trial court is to determine whether a bond should be required.

The parties dispute the propriety of the damage award of $83,000.00. Inasmuch as the judgment is to be vacated, our only concern with damages is in connection with the bond. At oral argument, plaintiff conceded that the damage award was excessive by $4,450.00. Any bond required by the trial court shall not exceed $78,550.00.

The judgment for plaintiff, in the amount of $83,000.00, is reversed. The cause is remanded with instructions to:

(a) Vacate the judgment for plaintiff and reinstate the case on the trial docket.

(b) Determine the amount of costs to be paid by Leslie Rakestraw.

(c) Determine the amount of attorney fees to be paid by Leslie Rakestraw.

(d) Determine whether a bond should be required. Should the trial court require a bond, the bond is to secure payment of any future judgment for plaintiff up to the amount of the bond. Should defendant fail to post a bond required by the trial court, the

trial court may prohibit defendant from calling witnesses on behalf of defendant at trial.

(e) The parties may present evidence concerning the determinations to be made under (b), (c) and (d).

IT IS SO ORDERED.

LOPEZ and BIVINS, JJ., concur.