2010 UT 40

**ARBOGAST FAMILY TRUST,**
Plaintiff and Respondent,

v.

**RIVER CROSSINGS, LLC, Defendant
and Petitioner.**

No. 20080699.

Supreme Court of Utah.

May 14, 2010.

Scott M. Lilja, Nicole M. Deforge, Salt Lake City, for plaintiff.

Tyler T. Todd, Chad J. Utley, Shawn T. Farris, St. George, for defendant.

NEHRING, Justice:

## INTRODUCTION

¶ 1 This case presents us with the question of what a party must do to "appear" under rule 5(a)(2)(B) of the Utah Rules of Civil Procedure. We hold that the court of appeals correctly determined that a rule 5(a)(2)(B) appearance requires a party to make a formal presentation or submission to the trial court. Because River Crossings failed to make an appearance as required by this rule, we affirm.

## BACKGROUND

¶ 2 In this opinion, we include only those facts we deem relevant to the specific question presented to us. A more detailed recitation of the facts and proceedings can be found at *Arbogast Family Trust v. River Crossings, LLC*, 2008 UT App 277, ¶¶ 2–9, 191 P.3d 39.

¶ 3 In September 2004, Arbogast Family Trust loaned River Crossings, LLC, $2,450,000. The loan repayment was due approximately one year later, on September 16, 2005. The loan agreement included a penalty provision imposing a six percent late fee if payment was more than five days overdue.

¶ 4 River Crossings repaid the loan in full on October 7, 2005, approximately twenty-one days after the due date. Because the loan was more than five days overdue, Arbogast claimed it was entitled to collect a late fee of over $148,000 plus interest. River Crossings claimed it owed no additional fees because Arbogast granted it an extension of time to repay the loan. Because of the dispute, River Crossings authorized Southern Utah Title Company to hold $178,000 in escrow until the matter was resolved. These funds were eventually deposited with the district court.

¶ 5 On January 10, 2006, Arbogast filed a Complaint for Declaratory Judgment to obtain the funds held in escrow. Arbogast granted River Crossings an extension of time to answer the complaint or to communicate a settlement offer. On June 28, 2006, River Crossings made a settlement offer to Arbogast. The next day Arbogast sent a letter rejecting the offer and stating:

> My client has previously granted your client an extension of time within which to answer the complaint. However, given the present state of the case, I am, on behalf of my client, hereby requesting that your client file an Answer to the complaint within twenty (20) days of the date of this letter.

*Id.* ¶ 4.

¶ 6 Approximately one month later, River Crossings sent an email to Arbogast's principal proposing the parties "discuss the direction of [the] lawsuit." *Id.* ¶ 5. No further communication occurred. On July 31, more than thirty days after the June 29 letter, Arbogast obtained a certificate of default from the court clerk. Arbogast did not alert River Crossings or provide it with a copy of its request for default judgment. On August 10, default judgment was entered against River Crossings. Notice of default was sent to River Crossings on August 15. *Id.*

¶ 7 On September 26, 2006, River Crossings filed a rule 60 motion to set aside the default judgment. The trial court denied the motion, and River Crossings appealed. River Crossings argued to the court of appeals that the district court abused its discretion when it refused to set aside the default judgment because Arbogast failed to provide notice of default to River Crossings as required by rule 5 of the Utah Rules of Civil Procedure. River Crossings further argued that the district court's refusal to set aside the default judgment was based on faulty findings of fact.

¶ 8 The court of appeals affirmed the district court's refusal to set aside the default judgment. *Id.* ¶ 35. Citing our decisions in *Central Bank & Trust Co. v. Jensen*, 656 P.2d 1009 (Utah 1982) and *Lund v. Brown*, 2000 UT 75, 11 P.3d 277, the court of appeals reasoned that Arbogast was not required to give notice to River Crossings before seeking default judgment because River Crossings failed to make a formal appearance through a pleading in the action as required by Utah Rule of Civil Procedure 5(a)(2)(B). *Arbogast,*

2008 UT App 277, ¶ 16, 191 P.3d 39. The court of appeals further found that the district court's refusal to set aside the default judgment was not based on faulty findings of fact and that River Crossings did not show any reasonable justification or excuse for its failure to answer Arbogast's complaint. *Id.* ¶¶ 29–31.

¶ 9 River Crossings petitioned for certiorari. We granted the petition to decide whether the court of appeals erred in its determination that River Crossings did not "appear" under Utah Rule of Civil Procedure 5(a)(2)(B) such that Arbogast was required to give River Crossings notice before default judgment was entered. We have jurisdiction in this case pursuant to Utah Code section 78A–3–102(3)(a) (2008).

### STANDARD OF REVIEW

¶ 10 On certiorari, "we review the decision of the court of appeals, not the decision of the district court." *Nolan v. Hoopiiaina*, 2006 UT 53, ¶ 19, 144 P.3d 1129. "The interpretation of a rule of procedure is a question of law that we review for correctness." *State v. Rodrigues*, 2009 UT 62, ¶ 11, 218 P.3d 610 (internal quotation marks and alteration omitted).

### ANALYSIS

¶ 11 According to Utah Rule of Civil Procedure 5(a)(1) "every judgment, every order ... every pleading ... every paper ..., every written motion ..., and every written notice, appearance, demand, offer of judgment, and similar paper shall be served upon each of the parties." Although this rule expresses a general policy that parties should have notice of any activity in the case, rule 5 goes on to denote a limit to this policy. Under rule 5(a)(2)(B) "[n]o service need be made on parties in default ... *for failure to appear.*" Utah R. Civ. P. 5(a)(2) (emphasis added).

¶ 12 Although rule 5 clearly articulates that notice, including notice of default, need not be given to parties who fail to appear in a proceeding, the rule does not answer the question presented here: What does it mean to "appear"?

¶ 13 River Crossings contends that the court of appeals erred when it concluded that only a "formal appearance" before a court, such as filing an answer, could constitute an appearance under rule 5(a). Directing our attention to federal circuit court interpretations of the federal equivalent of rule 5, River Crossings promotes a more expansive definition of appearance, one that would include some level of informal contacts or negotiations between the parties. According to River Crossings, this more generous definition is most consistent with the policy of hearing cases on the merits and is more in accord with our case law and the Utah Standards of Professionalism and Civility.

¶ 14 In contrast, Arbogast asks us to affirm the court of appeals' decision that only a formal appearance will suffice to trigger notice requirements under rule 5. Arbogast contends that this view is most consistent with our decisions in *Central Bank & Trust Co. v. Jensen*, 656 P.2d 1009 (Utah 1982) and *Lund v. Brown*, 2000 UT 75, 11 P.3d 277, and that this approach will most effectively foster a just, expedient, and predictable process.

¶ 15 We hold that the court of appeals correctly determined that (1) a party must make a formal filing or submission to the district court in order to make an appearance under rule 5(a) and (2) although not required by rule 5, the Utah Standards of Professionalism and Civility encourage attorneys to attempt to provide a final notification to the opposing party before entering default judgment.

## I. THE COURT OF APPEALS CORRECTLY DETERMINED THAT RULE 5 REQUIRES PARTIES TO FORMALLY APPEAR BY A FILING OR SUBMISSION TO THE DISTRICT COURT

¶ 16 This case presents us with the task of interpreting a single word within one of our procedural rules. When interpreting a rule of civil procedure, "we look to the express language of that procedural rule and to the cases interpreting it." *First Equity Fed., Inc. v. Phillips Dev., LC*, 2002 UT 56, ¶ 11, 52 P.3d 1137. "[T]o the extent that

they are similarly worded," we can also turn to the federal rules of civil procedure and cases interpreting them for further guidance. *Bichler v. DEI Sys., Inc.,* 2009 UT 63, ¶ 24 n. 2, 220 P.3d 1203; *First Sec. Bank v. Conlin,* 817 P.2d 298, 299 (Utah 1991). In conducting this analysis, it is "most important . . . that the rules be understood, and applied, with clarity and consistency," and that "the defendant, the court, the state, and others be *able to determine* [the meaning of the rule]." *State v. Todd,* 2006 UT 7, ¶ 8, 128 P.3d 1199.

¶ 17 Rule 5 expressly provides that all pleadings, papers, and any other information related to the lawsuit must be served on each of the parties except that "[n]o service need be made on parties in default . . . *for failure to appear.*" Utah R. Civ. P. 5(a) (emphasis added). The parties do not dispute that failing to make an appearance in a lawsuit may relieve the opposing party from having to give notice and serve pleadings. Rather, the only dispute is what a party must do to "appear" under the rule to trigger the right to receive notice of all filings and proceedings from opposing counsel.

■ ¶ 18 When we interpret a procedural rule, we do so according to our general rules of statutory construction. *See Burns v. Boyden,* 2006 UT 14, ¶ 19, 133 P.3d 370 ("We interpret court rules, like statutes and administrative rules, according to their plain language."). Thus, in our quest to define the word "appear," we start by examining the ordinary meaning or usually accepted interpretation. *See State v. Rothlisberger,* 2006 UT 49, ¶ 15, 147 P.3d 1176; *Keene v. Bonser,* 2005 UT App 37, ¶ 10, 107 P.3d 693 ("In construing the plain language of a [rule], words which are used in common, daily, nontechnical speech, should, in the absence of evidence of a contrary intent, be given the meaning which they have for laymen in such daily usage.") (internal quotation marks omitted); *State v. Parker,* 872 P.2d 1041, 1046 (Utah Ct.App.1994) (stating courts interpreting rules should look to the usually accepted definition). Though helpful, this exercise suggests that the word "appear" may have more than one reasonable interpretation. On the one hand, "appear" means "to become visible" or "to come before the public."

American Heritage Dictionary 120 (2d ed. 1985). This definition suggests that when a person appears, his or her presence is obvious, or easily perceived. On the other hand, the word "appear" is also less concretely defined as "to seem or look to be." *Id.* While this definition indicates that a party may look like it is present, this definition also suggests an appearance may be less definite, and that a person's presence or state of being may be more difficult to ascertain.

¶ 19 Because the ordinary meaning of the word "appear" has two common and somewhat competing interpretations, we delve further into how the word has been historically defined and used in our legal system and case law. *See First Equity Fed., Inc.,* 2002 UT 56, ¶ 11, 52 P.3d 1137 (stating courts should look to cases interpreting a procedural rule for interpretive guidance); *In re Worthen,* 926 P.2d 853, 866–67 (Utah 1996) (stating that when an interpretation of a word or provision is ambiguous we may look beyond the plain language to "historical evidence" and "policy arguments" for further direction). We find less divergence here. Legal definitions of "appearance" include "[t]o present oneself *formally* before a court as defendant, plaintiff, or counsel," American Heritage Dictionary 120 (emphasis added), or to "*com[e] into court* as a party or interested person" or by "participating in [a lawsuit] by *answer,* demurrer, or motion." Black's Law Dictionary 107 (8th ed. 2004) (emphasis added). Historically, an appearance required "some act by which a person who is sued submits himself to the authority and jurisdiction of the court." Black's Law Dictionary 107 (quoting Benjamin J. Shipman, *Handbook of Common–Law Pleading* § 5, at 24) (Henry Winthrop Ballantine ed., 3d ed. 1923); *see also* Scott K. Zesch, Annotation, *What Constitutes "Appearance" Under Rule 55(b)(2) of Federal Rules of Civil Procedure, Providing That if Party Against Whom Default Judgment is Sought Has "Appeared" in Action, That Party Must be Served With Notice of Application for Judgment,* 139 A.L.R. Fed. 603 § 2 (2008) (defining appearance as "an overt act by which a party comes into court and submits himself to [a court's] jurisdiction"). These definitions of appearance contemplate more than "seeming to be"

one way or another; they suggest an obvious and definite presence before a court. This formal showing leaves no question as to the presence of a party or his intent to defend the suit.

¶ 20 An examination of our own case law also demonstrates a commitment to a more formal reading of the rule. Although we have not previously been presented with the exact question· before us, we addressed the concept of an appearance under rule 5 in *Central Bank & Trust Co. v. Jensen*, 656 P.2d 1009 (Utah 1982), and again in *Lund v. Brown*, 2000 UT 75, 11 P.3d 277.

¶ 21 In *Central Bank*, the plaintiff, Central Bank & Trust Company, filed a complaint against defendants seeking a monetary judgment for an unpaid credit card balance. 656 P.2d at 1010. Several weeks later, the defendants' attorney contacted Central Bank's counsel to discuss the complaint. *Id.* Following the conversation, defendants' counsel wrote a letter to Central Bank's attorney "requesting copies of the pleadings and all other documents." *Id.* Central Bank's counsel promptly answered the letter, refusing to supply the documents, but expressing "a willingness to cooperate if [the defendants] appeared generally." *Id.* When no answer was filed, default judgment was entered without serving or otherwise notifying the defendants. *Id.* The defendants filed a motion to set aside the default judgment, arguing Central Bank's counsel had an obligation under rule 5 to give notice to the defendants. *Id.* at 1011. We concluded that "[Central Bank] was under no duty to notify defendants of the default," because defendants failed to make an appearance as required by rule 5. *Id.* at 1011–12. In doing so, we stated, "[W]e are satisfied that defendants had actual notice of the suit filed against them.... The defendants knowingly shirked their duty to respond, and they have no valid basis for setting the default aside." *Id.* at 1012.

¶ 22 In *Lund*, plaintiffs filed a complaint and the defendants filed an answer and counterclaim. 2000 UT 75, ¶ 3, 11 P.3d 277. The plaintiffs failed to respond to the counterclaim. Defendants obtained a default judg-

ment without serving the plaintiffs with copies of the request for default. *Id.* ¶ 5. After failing in their attempt to have the judgment set aside, the plaintiffs appealed the default judgment, arguing they were entitled to notice under rule 5 before default judgment was entered. *Id.* ¶ 14. The defendants argued that under *Central Bank*, we held that no notice was required for parties in default. *Id.* ¶ 27. We agreed with plaintiffs, and reversed the entry of default judgment. *Id.* ¶ 33. In doing so, we distinguished *Lund* from the facts in *Central Bank*:

> In [Central Bank] ... we did not address the circumstance where a party *having already made a formal appearance* in a case is subjected to a motion for default judgment on a counterclaim. In [*Central Bank* ], the defaulting party never made an appearance prior to having default judgment entered against him.

*Id.* ¶ 27 (emphasis added).

¶ 23 When read together, these cases form a consistent approach to appearance under rule 5. We agree with the court of appeals' analysis of the relationship between these cases and its formulation of the emerging rule: *Central Bank* and *Lund* stand for the proposition that "unless a party enters a formal appearance through a pleading in the trial court, it has not appeared and is not entitled to service under rule 5 of the Utah Rules of Civil Procedure." *Arbogast Family Trust v. River Crossings, LLC*, 2008 UT App 277, ¶ 16, 191 P.3d 39.

¶ 24 Although we identify a trend in our own case law toward requiring formal filing, we recognize that what it means to "appear" and how much and what a party must do to "appear" has led to a surprising amount of litigation in other parts of the country. While some jurisdictions hold fast to a formal, traditional interpretation of the rule, others embrace a looser, more informal definition. The parties have pointed out to us that in our limited case law discussion of rule 5 requirements, we have never directly addressed these competing lines of litigation. We take the opportunity to do so now.[1]

1. Because the language in Utah Rule of Civil Procedure 5(a) is substantially similar to the lan- guage in Federal Rule of Civil Procedure 55(b), we also look to federal cases interpreting the

¶ 25 We begin by examining the majority view that "in order to obtain a default judgment, a claimant must give [rule 5] notice not only to parties who have appeared formally, but also to those parties who have indicated to the moving party, in any manner, a clear purpose to defend against the claims." 10 James Wm. Moore et al., Moore's Federal Practice § 55.33[4][a] (3d ed. 2008). Commonly referred to as the "informal contacts" rule, this approach requires courts to engage in a case-by-case, highly fact-specific inquiry to determine whether a party's actions taken as a whole demonstrate a "clear intent to defend" the suit. *See id.*

¶ 26 The benchmark case in the informal contacts camp is *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe,* 432 F.2d 689 (D.C.Cir.1970). *See Wilson v. Moore & Assocs., Inc.,* 564 F.2d 366, 369 (9th Cir.1977) stating (*H.F. Livermore* is "the benchmark case in respect to Rule 55(b)(2)"). In *H.F. Livermore,* the defendant's counsel sent two letters and engaged in a telephone conversation regarding potential settlement negotiations. 432 F.2d at 690. The D.C. Circuit found that these actions were enough to constitute an appearance, requiring notice. *Id.* at 692. The court reasoned that the defendant "made its purpose to defend the suit quite plain" and "neither party was in any doubt that the suit would be contested if the efforts to agree were unavailing." *Id.*

¶ 27 Many jurisdictions have followed the *H.F. Livermore* informal contacts approach, although there is widespread disagreement among them as to how many and what type of informal contacts are needed to make an appearance. *See, e.g., New York Life Ins. Co. v. Brown,* 84 F.3d 137, 142 (5th Cir.1996) (finding that participation in a telephone conference with other parties and communicating to opposing counsel the intent to contest the suit was enough to constitute an appearance); *In re Roxford Foods,* 12 F.3d 875,

880–81 (9th Cir.1993) (finding that making a formal appearance in a sufficiently related bankruptcy action was enough to constitute an appearance in the civil case); *Muniz v. Vidal,* 739 F.2d 699, 700 (1st Cir.1984) ("[The] presentation of defenses and counterclaims to opposing counsel—make out a sufficiently strong indication of an intent to defend"); *cf. Franchise Holding II, LLC v. Huntington Rests. Group, Inc.,* 375 F.3d 922, 928 (9th Cir.2004) (holding that defendant did not appear when it failed to file an extension of time to answer pleadings or any other motion with the district court, failed to copy the district court on any correspondence outlining its possible defenses in the action, and made "no effort to preserve its interests in the district court until [the opposing party] began collecting on the default judgment."); *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.,* 840 F.2d 685, 689–90 (9th Cir.1988) (finding the defendant did not "appear," either in fact or constructively, when its settlement negotiations ended the day the summons was served and no communications occurred thereafter).

¶ 28 Courts adhering to the informal contacts rule stress the need to "look beyond the presence or absence of . . . formal actions to examine other evidence of active representation." *See, e.g., Lutomski v. Panther Valley Coin Exch.,* 653 F.2d 270, 271 (6th Cir.1981). By conducting a more searching inquiry as to whether parties have appeared in a case, these jurisdictions promote the policy of deciding cases on the merits rather than disposing of them on a rule of procedure. *See H.F. Livermore,* 432 F.2d at 691 ("[T]he policy underlying the modernization of federal procedure, namely, the abandonment or relaxation of restrictive rules which prevent the hearing of cases on their merits, is central to th[e] issue [of whether a party has made an appearance] )".

federal rule for guidance. *See First Sec. Bank v. Conlin,* 817 P.2d 298, 299 (Utah 1991); *Lund v. Brown,* 2000 UT 75, ¶ 26, 11 P.3d 277 ("[F]ederal interpretation[s] [of rule 5 are] persuasive in light of the fact that our rule 5 is 'substantially similar' to federal rule [55]."). Federal Rule of Civil Procedure 55(b) provides:

 If the plaintiff's claims is for a sum certain or a sum that can be made certain by computation,

the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant *who has been defaulted for not appearing* and who is neither a minor nor an incompetent person.

Fed.R.Civ.P. 55(b)(1) (emphasis added).

¶ 29 Though we find this liberal definition of "appear" to be laudable in its theoretical effort to save a party from default judgment, such a loose and nebulous definition of the word "appear" may lead to a lack of clarity, practical difficulty, and inconsistent results as to what conduct and level of participation is needed to "appear."

¶ 30 Because of the practical challenges and burdensome fact-specific inquiries required by the informal contacts rule, the Seventh Circuit, and a minority of other jurisdictions "ha[ve] rejected the idea that a claimant needs to give [rule 5] notice to anyone who has not made a formal appearance in the action." 10 Moore's Federal Practice § 55.33[4][b]; *see also Zuelzke Tool & Eng'g Co. Inc. v. Anderson Die Castings, Inc.*, 925 F.2d 226, 230 (7th Cir.1991) (rejecting a broad definition of appearance in favor of a bright-line rule requiring parties to make a formal submission to the district court); *Plaza del Lago Townhomes Ass'n, Inc. v. Highwood Builders, L.L.C.*, 148 P.3d 367, 371 (Colo.App.2006) (concluding "communication with the court is required" and that the "phrase 'appeared in the action' ... requires that a defendant communicate with the court ... that the defendant is aware of the proceedings and intends to participate in them"); *Town & Country Kids, Inc. v. Protected Venture Inv. Trust # 1*, 178 F.R.D. 453, 455 (E.D.Va.1998) ("Requiring a party to make at least some submission to the district court to apprise the court of a fact pertinent to its determination, i.e., whether that party has an interest in defending the suit."). Under this narrower definition, a party must make a formal filing or submission to the district court in order to make an appearance under rule 5. Once a party formally files or submits a pleading to the court, it is entitled to notice of all activity throughout the proceedings, and no default judgment may be entered without first serving the defaulting party. *See Zuelzke*, 925 F.2d at 230–31.

¶ 31 Although the formal filing approach and the informal contacts approach adhere to competing policy justifications, we note that both definitions of "appear" share two common features. First, the party claiming to have appeared must have done something; just wishing to appear will not make it so. Second, the acts that are claimed to constitute the appearance must be communicated to or apprehended by someone. The difference between the approaches centers on to whom the communication must be made. In making this determination, we must consider the context of the rule as a rule of civil procedure.

¶ 32 Notably, rules of civil procedure govern the manner in which civil disputes are presented to and decided by our courts. Rule 5 is a rule promulgated by this court to govern judicial actions. We must honor this contextual imperative in interpreting the rule.

¶ 33 When we examine the word "appear" in its context, we find the formal filing approach to be most consistent with the purpose of our rules of civil procedure. *See* 10 Moore's Federal Practice § 55.33[4][b]. Requiring a party to make a formal filing or submission to the court creates a bright-line rule that "is sensible and easy to administer." *Id.* The formal filing approach is "the better linguistic and practical argument," and sends a clear message to parties as to what is required to make an appearance. *Id.* We find that this specific and more definite meaning of "appear" best promotes our objective "that the rules be understood, and applied, with clarity and consistency." *State v. Todd*, 2006 UT 7, ¶ 8, 128 P.3d 1199. Indeed, requiring a formal filing as a predicate to an appearance under rule 5 will leave no question in the minds of plaintiffs, defendants, or courts as to who has made an appearance in a case. *See id.* ("[The] defendant, the court, the state, and others [should] be *able to determine* [the meaning of a rule]"). This rule will eliminate case-by-case litigation over whether a party's informal actions rise to the level of an appearance and best promotes efficient court management by allowing court clerks to quickly and easily determine whether the defaulting party has appeared in an action. *See Zuelzke*, 925 F.2d at 230.

¶ 34 We hold that in every instance, communications and conduct between parties will only enjoy the status of an appearance under rule 5 if marked by a formal filing with the

tribunal in which the relevant action is pending.

¶ 35 Having determined that Utah follows the minority approach to defining "appear" under rule 5(a)(2)(B), we now turn to River Crossings' claim that adhering to this minority approach runs afoul of our Utah Rules of Professionalism and Civility.

## II. THE UTAH STANDARDS OF PROFESSIONALISM AND CIVILITY SUPPLEMENT THE RULES OF CIVIL PROCEDURE BY ENCOURAGING COUNSEL TO GIVE NOTICE TO THE DEFAULTING PARTY BEFORE ENTERING DEFAULT JUDGMENT

¶ 36 Utah Standard of Professionalism and Civility 14–301(16) states, "Lawyers shall not cause the entry of a default without first notifying other counsel whose identity is known, unless their clients' legitimate rights could be adversely affected."

¶ 37 River Crossings contends that a formal filing requirement is at odds with this standard of professionalism and civility because an attorney may "act in full compliance with Rule 5(a)" when he fails to provide notice of default to opposing counsel, "while at the same time directly violating his professional obligations under Rule 14–301(16)." River Crossings argues that this precise conflict occurred in this case.

¶ 38 Arbogast disagrees, asserting its attorney complied with both the Utah Rules of Civil Procedure and the Utah Standards of Professionalism and Civility because before filing for default, Arbogast's counsel sent a letter to River Crossings that provided advance notice that it was time to file an answer to Arbogast's complaint.

¶ 39 The court of appeals found no conflict between a formal filing requirement under rule 5(a)(2)(B) of the Utah Rules of Civil Procedure and the notification requirement under the Utah Standards of Professionalism and Civility. *Arbogast Family Trust v. River Crossings, LLC*, 2008 UT App 277, ¶ 21, 191 P.3d 39. It reasoned that "a party can easily comply with the standards of civility, even though service is not required under

rule 5." *Id.* According to the court of appeals, counsel for Arbogast could have complied with the Standards of Professionalism and Civility, even without serving any papers, by simply calling, or sending a letter to alert River Crossings that "default was imminent." *Id.*

¶ 40 We agree with the court of appeals' assessment. A party's counsel can and should simultaneously comply with the rules of civil procedure and the standards of professionalism and civility. Our standards of professionalism and civility often promulgate guidelines that are more rigorous than those required by the Utah Rules of Civil Procedure and the Utah Code of Professional Conduct. Adherence to those standards promotes cooperation and resolution of matters in a "rational, peaceful, and efficient manner." Utah Standards of Professionalism and Civility pmbl. The rules of civil procedure establish minimum requirements that litigants must follow; the standards of professionalism supplement those rules with aspirational guidelines that encourage legal professionals to act with the utmost integrity at all times. *See* Gus Chin, Utah Standards of Professionalism and Civility: *Standard 2—Civility, Courtesy and Fairness*, 18 Utah Bar Journal 34, 35 (2005) (quoting Chief Justice E. Norman Veasey, *Making it Right: Veasey Plans Action to Reform Lawyer Conduct*, Bus. L. Today, Mar.–Apr. 1998, 42, 44) ("Ethics is a set of rules that lawyers must obey. Violations of these rules can result in disciplinary action or disbarment. Professionalism, however, is not what a lawyer must do or must not do. It is a higher calling of what a lawyer should do to serve a client and the public.").

 ¶ 41 In this case, we interpret Utah Rule of Civil Procedure 5(a) to require parties to serve notice of pleadings and papers to all parties who have formally appeared before the court in which the matter is pending. Although not required by rule 5, our standards of professionalism and civility further advise lawyers to give notice of default to *known parties* before entering notice of default, whether or not the parties have made a formal appearance. Utah Standards of Professionalism and Civility 14–301(16).

Adhering to such a practice is easy, promotes fairness, and reduces the number of motions to set aside default judgments filed under Utah Rule of Civil Procedure 60.

¶ 42 In this case, we find that although Arbogast complied with rule 5 of the Utah Rules of Civil Procedure, its attorney did not fully comply with the Utah Standards of Professionalism and Civility.[2] Under this standard, Arbogast's counsel should have notified River Crossings before entering default judgment. As the court of appeals suggested, such a burden is not onerous. *See Arbogast*, 2008 UT App 277, ¶ 21, 191 P.3d 39. Notification can be given in any form: a phone call, a letter, an email, or other communication will suffice. If, after receiving notification of a party's intent to enter default judgment, the defaulting party still fails to make an appearance by filing a document with the court, the non-defaulting party may enter default judgment without any further action, notice, or service.

¶ 43 We find that requiring attorneys to give opposing parties a final opportunity to make a formal appearance before entering default judgment is urged by our Standards of Professionalism and Civility and is a simple step that promotes fairness and efficiency in our judicial system. We encourage lawyers and litigants to follow this standard, and we caution that lawyers who fail to do so without justification may open themselves to bar complaints or other disciplinary consequences if their conduct also runs afoul of the Utah Rules of Professional Conduct.

## CONCLUSION

¶ 44 Today we affirm the decision and reasoning of the court of appeals and make clear that parties seeking to "appear" under rule 5(a)(2)(B) of the Utah Rules of Civil Procedure must make a formal filing or submission to the court. Although not required

by rule 5, we also find the Utah Standards of Professionalism and Civility encourage parties' attorneys to make some effort at final notification to opposing parties whose identity is known before attempting to enter default judgment.

¶ 45 Justice WILKINS and Justice PARRISH concur in Justice NEHRING's opinion.

DURRANT, Associate Chief Justice, concurring:

¶ 46 I concur fully in the majority's conclusion, but write separately because I would support incorporating the requirements for notice set forth in Utah Standard of Professionalism and Civility 14–301(16) ("Standard 16") into the Utah Rules of Civil Procedure. I agree with the majority's conclusion that the plain language of Utah Rule of Civil Procedure 5(a)(2)(B) does not require notice prior to entry of a default judgment if the party in default has failed to formally appear. As the majority's opinion makes clear, however, requiring formal appearance creates an incongruity between this rule of civil procedure and Standard 16. That standard states that "lawyers shall not cause the entry of a default without first notifying other counsel whose identity is known, unless their clients' legitimate rights could be adversely affected."[3] In light of this standard, I would support amending the Utah Rules of Civil Procedure.

¶ 47 I believe that Standard 16 is superior to the standard set forth at rule 5(a)(2)(B). First, where an attorney knows the identity of opposing counsel, requiring that the attorney notify opposing counsel before causing the entry of a default judgment will presumably lead to fewer default judgments. This will advance the general policy of resolving

---

**2.** Like the court of appeals, we do not question the sincerity of Arbogast's counsel. *Arbogast*, 2008 UT App 277, ¶ 21 n. 10, 191 P.3d 39. We recognize that Arbogast's attorney believed its June 29 letter constituted sufficient notice of its intent to enter default judgment against River Crossings and that Arbogast's attorney believed that this was all that was required under the rules of civil procedure and the Utah Standards

of Professionalism and Civility. We do not fault Arbogast for its assumption; rather, we seek to make clear or future cases what is recommended of lawyers under our Standards of Professionalism and Civility.

**3.** Utah Standards of Professionalism and Civility 14–301(16).

disputes on their merits.[4] The benefits of this are clear—parties will be afforded "a full opportunity to present their evidence and contentions as to disputed issues so [that cases] may be disposed of on substantial rather than upon technical grounds."[5]

¶ 48 Second, Standard 16 will likely be easier to administer than the "informal contacts" standard adopted by many jurisdictions. As the majority points out, examining whether a party's conduct taken as a whole indicates the party's intent to participate in a lawsuit would be highly fact-intensive and would require case-by-case application.[6] Even given the relative complexity of this standard, it has considerable support. Most jurisdictions that have examined the issue have opted to employ this "informal contacts" rule to promote resolution of cases on their merits.[7] The test set forth in Standard 16 will almost certainly be easier to administer than the test adopted by most jurisdictions because inquiring whether an attorney knew the identity of opposing counsel is simpler than weighing the relative value of an opposing party's informal conduct as it relates to a lawsuit.

¶ 49 In short, I believe that incorporating Standard 16 into the Rules of Civil Procedure would give rise to substantial benefits. These benefits would likely outweigh the costs associated with administering it—indeed, most jurisdictions that have considered the question have adopted a more burdensome standard in pursuit of the same benefits.

¶ 50 The Utah Standards of Professionalism and Civility were enacted to advance "the hallmarks of a learned profession dedicated to public service."[8] I believe that incorporating Standard 16 into the Utah Rules of Civil Procedure would contribute greatly to this goal. Accordingly, while I agree with the majority, I would support an amendment of the Utah Rules of Civil Proce-

dure that would incorporate the notice requirements set forth in Standard 16, and would refer this issue to our Advisory Committee on the Rules of Civil Procedure for study and recommendation.

¶ 51 Chief Justice DURHAM and Justice PARRISH concur in Associate Chief Justice DURRANT's concurring opinion.

---

4. See *Mason v. Mason*, 597 P.2d 1322, 1323 (Utah 1979) ("[C]ourts should be liberal in granting relief against judgments taken by default to the end that controversies may be tried on the merits.").

5. *McKean v. Mountain View Mem'l Estates*, 17 Utah 2d 323, 411 P.2d 129, 130 (1966).

6. *Supra*, ¶ 25.

7. *Supra*, ¶¶ 25, 27–28.

8. Utah Standards of Professionalism and Civility pmbl.